IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC AND INTELLECTUAL VENTURES II LLC, , | ) ) ) | |
| Plaintiffs, | ) ) ) ) | C.A. No. 12-193 (LPS) |
| v. | ) ) | |
| AT&T MOBILITY LLC, SBC INTERNET SERVICES, INC., T-MOBILE USA, INC., NEXTEL OPERATIONS, INC., AND SPRINT SPECTRUM L.P., | ) ) ) ) ) | |
| Defendants. | ) | |

### OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO SEVER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jying@mnat.com

*Attorneys for T-Mobile USA, Inc., Nextel Operations, Inc. and Sprint Spectrum, L.P.*

SEITZ ROSS ARONSTAM & MORITZ LLP
Collins J. Seitz, Jr. (#2237)
100 South West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com

*Attorneys for AT&T Mobility LLC and SBC Internet Services Inc.*

May 3, 2012

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

I.      Defendants Are Improperly Joined ............................................................................ 6

    A.      Severance Is Necessary Where Plaintiffs Have Failed To Satisfy the Joinder
       Requirements of 35 U.S.C. § 299 .................................................................. 6

    B.      Plaintiffs' Failure To Plead that the Transactions or Occurrences at Issue Relate
       to the Same Accused Product or Process Constitutes Misjoinder ................................. 8

    C.      Plaintiffs Have Failed To Allege that Their Claims Arise From the Same
       Transaction, Occurrence, or Series of Transactions or Occurrences ............................. 9

        1.      For Eleven Counts, Plaintiffs Have Failed To Put Forth *Any*
          Allegations Indicating that Their Claims Arise from the Same
          Transaction, Occurrence, or Series of Transactions or Occurrences .............. 9

        2.      The Vague Allegations of Joint Infringement in Plaintiffs' Remaining
          Four Counts Are Insufficient To Establish that Those Claims Arise
          from the Same Transaction, Occurrence, or Series of Transactions or
          Occurrences ................................................................................................. 11

    D.      Plaintiffs' Claims Against the Three Defendant Groups Should Be Severed To
       Protect Defendants from Undue Prejudice .................................................................. 14

II.     Plaintiffs Are Separate Entities that Do Not Jointly Own Any of the Patents-
    in-Suit and, Accordingly, the Court Should Sever Plaintiffs' Claims into
    Separate Lawsuits ...................................................................................................... 17

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdelkarim v. Gonzales*,
    No. 06-14436, 2007 U.S. Dist. LEXIS 31407 (E.D. Mich. Apr. 30, 2007)....................... 17, 18

*Allen v. Dollar Tree Stores, Inc.*,
    No. 2:12-cv-00121-GEB-CKD, 2012 WL 948713 (E.D. Cal. Mar. 20, 2012)........................ 18

*Androphy v. Smith & Nephew, Inc.*,
    31 F. Supp. 2d 620 (N.D. Ill. 1998) ........................................................................ 8

*Applewhite v. Reichhold Chems.*,
    67 F.3d 571 (5th Cir. 1995) .................................................................................. 14

*Body Sci. LLC v. Boston Sci. Corp.*,
    --- F. Supp. 2d ----, 2012 WL 718495 (N.D. Ill. Mar. 6, 2012) ...................................... 7, 11, 12

*Boretsky v. Governor of New Jersey*,
    433 F. App'x 73 (3d Cir. 2011) ............................................................................ 17

*Brandeis Univ. v. East Side Ovens, Inc.*,
    No. 11-619, 2012 WL 506616 (W.D. Wis. Feb. 15, 2012) ........................................ 7

*Deskovic v. City of Peekskill*,
    673 F. Supp. 2d 154 (S.D.N.Y. 2009)................................................................... 16, 17

*Franconia Assocs. v. United States*,
    61 Fed. Cl. 335 (Fed. Cl. 2004) .......................................................................... 18, 19

*Fujitsu Ltd. v. Netgear*,
    620 F.3d 1321 (Fed. Cir. 2010)............................................................................ 13

*Gammons v. Real Prop. Inv. Servs.*,
    No. CV-10-8081-PCT-LOA, 2010 U.S. Dist. LEXIS 139930 (D. Ariz. Aug. 9, 2010).......... 19

*Gary v. Albino*,
    No. 10cv886 (NLH), 2010 WL 2546037 (D.N.J. June 21, 2010) ............................... 14

*Genetic Techs. Ltd. v. Agilent Techs., Inc.*,
    No. 11-cv-1389-WJM-KLM, 2012 WL 1015355 (D. Colo. Mar. 23, 2012)..................... 7

*Grayson v. K-Mart, Corp.*,
    849 F. Supp. 785 (N.D. Ga. 1994)....................................................................... 18

*Graziose v. Am. Home Prods. Corp.*,
    202 F.R.D. 638 (D. Nev. 2001)............................................................................ 18

*Hard Drive Prods., Inc. v. Does 1-188*,
   809 F. Supp. 2d 1150 (N.D. Cal. 2011) ...................................................................... 14, 15, 17

*Harris v. Gerth*,
   Case No. 08-CV-12374, 2008 U.S. Dist. LEXIS 104921 (E.D. Mich. Dec. 30, 2008)...... 19, 20

*Intel Corp. v. Commonwealth Sci. & Indus. Res. Org.*,
   C.A. Nos. 06-551, 06-549, 06-550, 07-204, 06-324,
   2008 WL 5378037 (E.D. Tex. Dec. 23, 2008) ......................................................................... 17

*Michaels Bldg. Co. v. Ameritrust Co.*,
   848 F.2d 674 (6th Cir. 1988) ................................................................................................... 18

*Morgan v. Cohen*,
   Case No. 2:11-cv-11780, 2011 U.S. Dist. LEXIS 64407 (E.D. Mich. June 16, 2011) ........... 19

*Pergo, Inc. v. Alloc, Inc.*,
   262 F. Supp. 2d 122 (S.D.N.Y. 2003)................................................................................. 10, 11

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
   220 F.R.D. 415 (D. Del. 2004) ................................................................................................ 14

*Reid v. Gen. Motors Corp.*,
   240 F.R.D. 260 (E.D. Tex. 2007).............................................................................................. 13

*Rudd v. Lux Prods. Corp.*,
   No 09-6957, 2011 WL 148052 (N.D. Ill. Jan. 12, 2011)........................................................ 10

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
   No. 10 C 1101, 2010 WL 3516106 (N.D. Ill. Sept. 1, 2010)..................................................... 8

*WiAV Networks, LLC v. 3Com Corp.*,
   No. C 10-03448, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010)......................................... *passim*

*Wynn v. Nat'l Broad. Co., Inc.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) ................................................................................... 14

**Statutes**

35 U.S.C. § 299..................................................................................................................... *passim*

**Other Authorities**

H.R. Rep. No. 112-98, (June 1, 2011),
   *available at* http://www.uspto.gov/aia_implementation/crpt-112hrpt98-pt1.pdf. ................ 7, 11

Moore's Federal Practice – Civil § 21.02[1] (3d ed. 2007) ......................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1)..............................................................................................................3, 5

Fed. R. Civ. P. 20.................................................................................................................... *passim*

Fed. R. Civ. P. 21 ...................................................................................................... 3, 14, 16, 17

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| D.I.………………………………………… | Docket Index |
| D.I. 1, Compl………..……………………… | Docket Index 1, Complaint |
| Count.…………………………………… | Count set forth in the Complaint |
| Defendants…………………………………… | AT&T Mobility LLC, SBC Internet Services, Inc., T-Mobile USA, Inc., Nextel Operations, Inc., and Sprint Spectrum L.P. |
| IV I.…………………………………………… | Intellectual Ventures I |
| IV II.………………………………………… | Intellectual Ventures II |
| Defs.' Motion to Dismiss Op. Br. …………… | Opening Brief in Support of Defendants Motion to Dismiss (D.I. 13) |
| Plaintiffs…………………………………… | Intellectual Ventures I and Intellectual Ventures II |
| '737 Patent………………………………… | U.S. Patent No. 6,115,737 |
| '0032 Patent……………………………... | U.S. Patent No. 5,960,032 |
| '073 Patent………………………………… | U.S. Patent No. 6,170,073 |
| '677 Patent………………………………… | U.S. Patent No. 5,557,677 |
| '392 Patent………………………………… | U.S. Patent No. 7,136,392 |
| '011 Patent………………………………… | U.S. Patent No. 7,343,011 |

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC filed their Complaint against Defendants AT&T Mobility LLC, SBC Internet Services, Inc., T-Mobile USA, Inc., Nextel Operations, Inc., and Sprint Spectrum L.P. on February 16, 2012.  In fifteen separate counts, the Complaint alleges infringement of fifteen patents spanning at least five broad categories of technology.  Defendants AT&T Mobility and SBC Internet Services are wholly owned subsidiaries of AT&T Inc.  (D.I. 1, Compl. ¶¶ 3-4.)  Sprint Spectrum and Nextel Operations also share common ownership.[1]  Otherwise, the Defendants are separate and unrelated to each other.

Defendants respectfully submit this memorandum in support of their Motion to Sever.  Defendants move under 35 U.S.C. § 299 and Federal Rule of Civil Procedure 20(a)(2) to sever the cases against the three Defendant groups: (1) AT&T/SBC Internet Services ("AT&T"), (2) Sprint Spectrum/Nextel Operations ("Sprint"), and (3) T-Mobile.  With respect to each of the three Defendant groups, Defendants also move under Federal Rule of Civil Procedure 20(a)(1) to sever claims asserted by Plaintiff IV I from those asserted by Plaintiff IV II.

## SUMMARY OF ARGUMENT

The scope of this case as currently pled is highly unmanageable.  Two separate Plaintiffs have lumped together claims based on fifteen patents against three groups of disparate Defendants that are industry competitors.  More than 200 patent claims are asserted.[2]  At least

---

[1]    *See* http://www.sprint.com/companyinfo/history/ (explaining corporate histories of Sprint and Nextel and noting that the two companies merged and launched operations in 2005) (Ex. C).  As per the allegations in the Complaint, Sprint and Nextel also both maintain their principal places of business at 6200 Sprint Parkway, Overland Park, Kansas 66251. (D.I. 1, Compl. ¶¶ 6-7.)

[2]    Although the Complaint does not identify any of the asserted claims, for some patents, the Complaint provides that only method claims are asserted.  (*See generally* D.I. 1, Compl.).

five broadly defined categories of technology are implicated.  Defendants' accused services vary just as widely.   In these circumstances, joinder of Defendants in a single action is wholly improper under the principles set forth in Federal Rule of Civil Procedure 20(a)(2) and the relevant case law, as well as in the newly enacted 35 U.S.C. § 299 ("Section 299"), which codified the majority interpretation of Rule 20(a)(2) in patent cases and added new, more stringent requirements for joinder.

Significantly, beyond one conclusory allegation (D.I. 1, Compl. ¶ 56), Plaintiffs have failed to set forth any factual allegations that Defendants' alleged infringement relates to the "making, using, importing into the United States, offering for sale, or selling *of the same accused product or process*," one of Section 299's most significant new joinder requirements in patent cases.  *See* 35 U.S.C. § 299(a)(1) (emphasis added).  In addition, although the Complaint recites in one sentence the legal standard for permissive joinder (*see* D.I. 1, Compl. ¶ 56), it is apparent from Plaintiffs' allegations that their claims do not arise from a single transaction or series of transactions or occurrences.  For eleven counts, Plaintiffs allege only that Defendants have violated the same patents-in-suit.  Under the plain language of Section 299 of the America Invents Act, such an allegation unequivocally does *not* provide a basis for joinder.  *See* 35 U.S.C. § 299(b) ("For purposes of this subsection, accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit.").  Moreover, for the remaining four counts of the Complaint, Plaintiffs' vague allegations of joint infringement are insufficient to establish that Plaintiffs' claims arise from the same transaction, occurrence, or series of transactions or occurrences.  *See* 35 U.S.C. § 299(a)(1). Accordingly, severance of the multiple Defendant groups is dictated by Section 299, and further warranted by Rule 20(a)(2).

In addition, Rule 20(a)(1) prohibits the joinder of two separate plaintiffs under these circumstances. IV I is the Plaintiff with respect to thirteen of the fifteen counts (Counts I-V and VIII-XV), while IV II is the Plaintiff with respect to two counts (Counts VI and VII). Besides being brought by a different Plaintiff, Counts VI and VII also assert separate and unrelated patents from the remaining counts and accuse technologies that are separate and distinct from the technologies asserted by IV I in its counts. Significantly, IV II has not alleged any connection between Counts VI and VII and the remaining counts, or between the various patents and technologies accused in those counts. Furthermore, none of the patents-in-suit are jointly owned by Plaintiffs, and Plaintiffs are separate and distinct legal entities. There will be differences between the two Plaintiffs in terms of discovery and documents, damages considerations, witnesses, and/or standing and ownership issues.[3] Even if joinder of Plaintiffs here were proper under Rule 20, under the broad discretion provided by Rule 21, the Court is authorized to sever claims brought by separate plaintiffs under these factual circumstances.

## STATEMENT OF FACTS[4]

Defendants' Motion to Dismiss details the allegations of the Complaint and explains why Plaintiffs fail to state a claim for indirect infringement and joint infringement and why Plaintiff IV I lacks standing to assert Count VIII.[5] The facts set forth below are those relevant to severance.

---

[3]     For example, Defendants' Motion to Dismiss under Rule 12(b)(1), seeking to dismiss Count VIII for lack of standing, affects only IV I.

[4]     To aid the Court in its analysis, Defendants have set forth their proposed severance of these cases in a chart attached hereto as Exhibit A. Set forth in Exhibit B is a chart summarizing the patents, their general technology area, the IV entity that is asserting the patent, and which patents are asserted against which Defendants.

[5]     *See* Opening Brief in Support of Defendants Motion to Dismiss. D.I. 13.

As a threshold matter, Plaintiffs have asserted claims regarding fifteen patents that span at least five general technological categories.  Specifically, Plaintiffs' claims can be broadly grouped into the following categories: (1) Messaging claims (Counts I–V); (2) Directory Assistance claims (Count VI); (3) Customer Website claims (Count VII); (4) Signal Processing claims (Counts VIII–XI); and (5) Wi-Fi claims (Counts XII–XV).  (*See* Ex. B (outlining counts by technology and Defendant).)   In total, these patents contain 392 claims, and, through a combination of method and system claims, Plaintiffs are potentially asserting a total of 229 of these claims (all 209 method claims, plus the 20 system claims from the patents asserted in Counts XII, XIV, and XV.  Not all patents are asserted against each Defendant.  Instead, although all fifteen counts in the Complaint are asserted against T-Mobile, Count VII (United States Patent No. 6,115,737) is not asserted against AT&T, and Count X (United States Patent No. 6,170,073) is not asserted against Sprint.

Turning to the allegations in the Complaint, beyond a single, conclusory sentence that recites the legal standard for permissive joinder (*see* D.I. 1, Compl. ¶ 56), Plaintiffs set forth no facts alleging that their claims arise from the same transaction, occurrence, or series of transactions or occurrences, as is required under 35 U.S.C. § 299 and Rule 20 of the Federal Rules of Civil Procedure.  Instead, for eleven of the fifteen counts in the Complaint, Plaintiffs use nearly identical boilerplate language to allege that Defendants "either alone or in conjunction with others" infringed the patents-in-suit "in violation of 35 U.S.C. § 271."  (*See* Counts III–VII, IX, XI–XV.)   Plaintiffs additionally allege in three of these counts (Counts III–V) that Defendants "share amongst each other phone numbers and identification information" and, for Counts III and IV, Plaintiffs allege that this sharing of information "facilitates the blocking of calls using the technology claimed in the [patent-in-suit]" and that Defendants' "cooperation . . .

enable[s] customers on one network to block calls originating on another network."  Plaintiffs do not allege, however, any facts from which the Court could infer that Plaintiffs' claims arise from the same transaction or occurrence, or the same series of transactions or occurrences.  Plaintiffs' failure to make any such allegations leaves Plaintiffs with nothing but an allegation that multiple Defendants allegedly have violated the same patents-in-suit.

As for the remaining four counts (Counts I, II, VIII, and X), Plaintiffs' vague allegations of joint infringement are insufficient to meet Plaintiffs' burden of establishing that their claims arise from the same transaction, occurrence, or series of transactions or occurrences. Plaintiffs do not allege that one Defendant has acted as a "mastermind" exercising control or direction over the other Defendants.  In fact, any such allegations would be nonsensical in this context, where Defendants are fierce competitors with separate systems and technologies. Beyond Plaintiffs' perfunctory allegations that Defendants entered into arms-length agreements or shared information with each other, Plaintiffs do not sufficiently allege that Defendants' actions related to the same transaction or occurrence, as it is Plaintiffs' burden to plead.

Finally, the two Plaintiffs are distinct entities who separately own their respective patents-in-suit.[6]  IV I is the Plaintiff with respect to thirteen of the fifteen counts (Counts I-V, VIII-XV), and IV II is the Plaintiff with respect to the two remaining counts (Counts VI and VII).  Plaintiffs do not allege that IV I and IV II are commonly owned, and the claims asserted

---

[6]    Defendants note that, with respect to the '0032 Patent in Count VIII, Plaintiff IV I has alleged that it is the "exclusive licensee," rather than the true owner, for this patent.  For the reasons discussed in the Opening Brief in Support of Defendants' Motion to Dismiss, this Count should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for IV I's lack of standing.

by IV I accuse technologies that are entirely separate and distinct from the technologies at issue in the claims asserted by IV II.[7]

## ARGUMENT

### I.  Defendants Are Improperly Joined

#### A.  Severance Is Necessary Where Plaintiffs Have Failed To Satisfy the Joinder Requirements of 35 U.S.C. § 299

For patent cases filed after September 15, 2011 (including this case), joinder of defendants is governed by Section 299 of the America Invents Act ("AIA") (codified at 35 U.S.C. § 299), which provides, in pertinent part:

> (a) [P]arties that are accused infringers may be joined in one action as defendants . . . *only if*--(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences* relating to the making, using, importing into the United States, offering for sale, or selling of the *same accused product or process*; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a) (emphasis added).   Notably, Section 299(a), which largely tracks the language of Federal Rule of Civil Procedure 20(a)(2), added a new requirement for patent cases that the transactions or occurrences at issue relate to the making, using, importing, offering for sale, or selling of the "*same accused product or process*."   35 U.S.C. § 299(a)(1) (emphasis added).   This requirement represents a material addition to the traditional requirements of Rule 20 and further limits the ability of plaintiffs in patent cases to join multiple defendants in a single action.

---

[7]   As noted *supra,* system claims only are being asserted from Counts XII, XIV, and XV, all of which are brought by IV I.  Thus, another difference between IV I and IV II is that IV I is asserting system claims while IV II is not.

In addition, the AIA makes clear that "[f]or purposes of this subsection, accused infringers may not be joined in one action as defendants . . . *based solely on allegations that they each have infringed the patent or patents in suit*." 35 U.S.C. § 299(b) (emphasis added).   In passing this provision of the AIA, Congress codified the majority rule on the application of Rule 20 to patent cases, which established that "a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent." *Body Sci. LLC v. Boston Sci. Corp.*, --- F. Supp. 2d ----, 2012 WL 718495, at *3 (N.D. Ill. Mar. 6, 2012) (internal quotation marks and citations omitted)).[8]

Plaintiffs bear the burden of establishing that joinder is proper.   *See Brandeis Univ. v. East Side Ovens, Inc.*, No. 11-619, 2012 WL 506616, at *1 (W.D. Wis. Feb. 15, 2012). Allegations against unrelated defendants who offer unrelated products or services are not sufficient.   For example, in *WiAV Networks, LLC v. 3Com Corp.*, plaintiffs sued a number of unrelated defendants, many of whom were "direct competitors of each other."   No. C 10-03448, 2010 WL 3895047, at *1 (N.D. Cal. Oct. 1, 2010).   In holding that plaintiffs' claims did not arise from the same transaction or occurrence, the court noted that there was "no allegation in the complaint that all 'Laptop Defendants' and accused products share identical wireless chipsets or components from a central manufacturer," and that "[a]t best, plaintiffs argue . . . that the accused products share a significant overlap in their wireless chipsets."   *Id.* at *3 n.2 (internal quotation marks omitted).   The court reasoned that "infringement issues [would] vary from product to product as they will invariably contain different components, from different

---

[8]    *See also Genetic Techs. Ltd. v. Agilent Techs., Inc.*, No. 11-cv-1389-WJM-KLM, 2012 WL 1015355, at *3 (D. Colo. Mar. 23, 2012) (noting that the "majority view" regarding the application of Rule 20 "is reflected in the AIA"); H.R. Rep. No. 112-98, at 54-55 & n. 61 (June 1, 2011), *available at* http://www.uspto.gov/aia_implementation/crpt-112hrpt98-pt1.pdf (last accessed on April 30, 2012).

manufacturers, with different specifications, that work in different ways," and, for these reasons and others, found that defendants had been improperly joined.  *Id.* at *3.

Similarly, in *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, the court noted that "joinder is often improper where two competing businesses have allegedly infringed the same patent by selling different products."  No. 10 C 1101, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010).  In granting defendants' motion to sever, the court explained that the "accused infringing software, other evidence and witnesses are all different and unique in the actions against [each defendant]" and that the causes of action against each defendant were "only arguably related because they are derived from the [patent-in-suit]."  *Id.*  Likewise, in *Androphy v. Smith & Nephew, Inc.*, the court found that "[c]learly, the common transaction requirement ha[d] not been met" where defendants were "separate companies that independently design, manufacture and sell different products in competition with each other."  31 F. Supp. 2d 620, 623 (N.D. Ill. 1998).

**B.      Plaintiffs' Failure To Plead that the Transactions or Occurrences at Issue Relate to the Same Accused Product or Process Constitutes Misjoinder**

As noted above, Section 299 now requires that the transaction or occurrence at issue in patent cases relate to the "making, using, importing into the United States, offering for sale, or selling *of the same accused product or process*."  35 U.S.C. § 299(a) (emphasis added).  Beyond a single, conclusory allegation,[9] however, Plaintiffs have not put forth any facts to allow the Court to infer that the same accused product or processes are at issue here.  Indeed, any attempt to so plead would be futile.  As already noted, Defendants are unrelated parties that compete with each other through their different products and services.  Any agreements Defendants purportedly entered into are not alleged by Plaintiffs to be anything other than arms-

---

[9]    *See* D.I. 1, Compl. ¶ 56.

length agreements entered into by separate, independent corporations.  These agreements—and the purported "cooperation" between Defendants that these agreements promote—do not establish that Defendants made, used, imported, or sold the same accused product or process, as the statute requires.

Likewise, the alleged "interoperability" of Defendants' networks—which is the very purpose of common industry standards—does not establish that Defendants use the same products or processes, and Plaintiffs have made no such allegations here.  Therefore, Defendants' alleged adoption and use of common standards is insufficient to support an inference that Defendants are making, using, importing, or selling the same product or process for purposes of Section 299.  Defendants are not being sued for their "participation in standard bodies."  (D.I. 1, Compl. ¶ 51.)  Instead, it is the accused product or process itself that is the focus of the joinder inquiry, not the development or use of common standards with which the accused product or process may or may not comply.

Plaintiffs' failure to allege that Defendants made, used, imported, or sold the same accused product or process is misjoinder of Defendants under Section 299, and requires severance of Plaintiffs' claims against Defendants into separate actions.

**C.**  **Plaintiffs Have Failed To Allege that Their Claims Arise From the Same Transaction, Occurrence, or Series of Transactions or Occurrences**

**1.**  **For Eleven Counts, Plaintiffs Have Failed To Put Forth *Any* Allegations Indicating that Their Claims Arise from the Same Transaction, Occurrence, or Series of Transactions or Occurrences**

Putting aside Plaintiffs' failure to accuse "the same product or process" with respect to all Defendants, as noted *supra*, in eleven counts in the Complaint—Counts III, IV, V, VI, VII, IX, and XI–XV—Plaintiffs set forth no facts alleging that "any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of

the *same transaction, occurrence, or series of transactions or occurrences*," as is required by Section 299.  35 U.S.C. § 299(a)(1) (emphasis added).  Instead, Plaintiffs merely recite the above-quoted statutory language (*see* D.I. 1, Compl. ¶ 56) and claim, in conclusory fashion, that Defendants, acting "either alone or in conjunction with others," have infringed the patents-in-suit.  Plaintiffs, however, have not alleged that Defendants use the same technologies or configurations, share the same suppliers or vendors, or deploy their services in the same manner. In fact, Plaintiffs could not make such allegations here, even if they tried.

Without such allegations, Plaintiffs are left with nothing but a series of claims that Defendants – who are competitors[10] – violated the same patents-in-suit.  Under the plain language of Section 299, however, "accused infringers may not be joined in one action as defendants . . . *based solely on allegations that they each have infringed the patent or patents in suit*." 35 U.S.C. § 299(b) (emphasis added).  Indeed, the majority of courts applying Rule 20 to patent cases prior to the AIA routinely dismissed complaints containing allegations that the defendants merely infringed the same patents.  Congress expressly codified this majority rule in Section 299.[11]  With the passage of Section 299, Congress eliminated any dispute as to whether a

---

[10]     *See,                          e.g.,*                          http://explore.t-mobile.com/verizon-att-sprint?cm_mmc_o=Vzbp%20mwzygtCjCVAygtzlwCjCPyzEpCjCW%2f-      (T-Mobile marketing campaign comparing T-Mobile network to that of Sprint, AT&T, and Verizon) (video presentation last accessed on April 29, 2012); https://www.billshrink.com/cell-phones/carrier-compare/index.html (comparing networks and features between T-Mobile, Sprint,       AT&T,       and       Verizon)       (Ex.       D); http://www.pcworld.com/article/221931/4g_wireless_speed_tests_which_is_really_the_fastest.html (comparing results in wireless network performance tests for Verizon, AT&T and T-Mobile) (Ex E).

[11]     *See Rudd v. Lux Prods. Corp.*, No 09-6957, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011) (noting that "the prevailing approach of . . . numerous [courts]" is that "a party fails to satisfy Rule 20(a)'s requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent" (cited in the United States House of Representatives' Report on the AIA, cited *supra* at note 8)); *see also Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) ("[T]he fact that two parties may manufacture or sell similar products, and that

plaintiff may sue multiple defendants who simply infringe the same patent and resolved this dispute with a resounding "no."  Plaintiffs fail to meet their burden of pleading that Defendants have done more than merely infringe the same patent and, accordingly, Counts III, IV, V, VI, VII, IX, and XI–XV should be severed by Defendant group.[12]

> ### 2.   The Vague Allegations of Joint Infringement in Plaintiffs' Remaining Four Counts Are Insufficient To Establish that Those Claims Arise from the Same Transaction, Occurrence, or Series of Transactions or Occurrences

The remaining four Counts (Counts I, II, VIII, and X) reference joint infringement but, as detailed in Defendants' Motion to Dismiss, fail to state a claim as a matter of law.  (*See* Defs.' Motion to Dismiss Op. Br. at 13-18.)  Not only are allegations that Defendants entered into arms-length agreements, facilitated access between their networks, and shared information insufficient to state a claim for joint infringement, but they also are insufficient to establish that Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences such that joinder would be proper.

Another district court confronting similar allegations recently granted defendants' motion to sever.  *See Body Sci.*, 2012 WL 718495, at *3.  In *Body Science*, plaintiff argued that it alleged more than mere infringement of the same patent, as it had alleged "additional commonalities" that supported joinder in that case.  *Id.* at *4.  For example, plaintiff claimed that joinder was proper because "through [defendants'] membership in the 'Continua Health

---

these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).").

[12]   To the extent that Plaintiffs seek to establish that joinder was proper by relying on their allegations in Counts III, IV, and V that Defendants cooperate through bilateral agreements, share information with each other, and/or facilitate access to their networks to establish that joinder is proper, such allegations fall short of establishing that Plaintiffs' claims arise from the same transaction or occurrence for the reasons discussed herein in Section I.C.2.

Alliance' consortium, 'Defendants cooperate on and apply standards-based protocols to facilitate interoperability.'" *Id.* at *5.  In rejecting plaintiff's argument, the court noted that plaintiff had cited no case law to support "its contention that membership in an industry association may constitute the 'same transaction or occurrence,'" and held that "[s]imply being a member of an industry organization does not indicate that Defendants have jointly designed, developed, manufactured, marketed, or sold their Accused Products." *Id.*

Furthermore, the court concluded that certain defendants' maintenance of a "business relationship that utilizes shared resources" was insufficient to support joinder. *Id.* at *4.  Specifically, even though these defendants admitted that one sold an accused product to the other, the court noted that "[t]his product . . . is only one out of a total of sixteen Accused Products between them that allegedly infringe the patents-in-suit," and "[j]udicial economy and efficiency will therefore not be increased by maintaining them as joined Defendants and severance will avoid prejudice and confusion." *Id.* at *6.

Likewise, here, Plaintiffs allege no more than interoperability of Defendants' networks due to compliance with common standards and the exchange of information and data to facilitate access to those networks.  Even assuming *arguendo* that these allegations were true— which Defendants otherwise deny—different products may comply with common standards or general agreed-upon guidelines in different ways, which not only results in different implementations and processes but also precludes a finding that Plaintiffs' claims arise from the same transaction or occurrence.  For example, in *WiAV Networks*, the plaintiff argued that certain defendants were "logically connected" because they sold products that implemented the IEEE 802.11 wireless protocol.  2010 WL 3895047, at *2.  In finding that this alleged connection did not warrant joinder of the defendants, the court explained that "mere compliance with an

industry protocol does not necessarily establish that all compliant devices implement the protocol in the same way.  Different accused devices may achieve compliance with an industry standard or protocol through varying designs, with different tolerances, and with competing features." *Id.* (citing *Fujitsu Ltd. v. Netgear*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010)).  The defendants in question were "unrelated and compete[d] with each other through their accused products," and the court reasoned that "[e]ven if each of the accused devices is compliant with the IEEE 802.11 wireless protocol, it is far from a foregone conclusion that the asserted claims in [plaintiff's] patents will cover *all* implementations of the protocol." *Id.* (emphasis in original).  Similarly, in the current complaint, Plaintiffs allege no more than that Defendants entered into arms-length agreements to cooperate and that they agreed to comply with common standards.  These allegations are not sufficient to demonstrate that Plaintiffs' claims arise from the same transactions or occurrences.

It is Plaintiffs' burden to establish that joinder is proper, and these vague allegations of joint infringement do not satisfy that burden.  Plaintiffs cannot dispute that Defendants are separate companies that maintain their own systems, and Plaintiffs do not allege that one Defendant controls or directs how the other Defendants implement or configure those systems.  In other words, Plaintiffs "cannot escape the fact that [they are] suing unrelated and competing defendants for their own independent acts of patent infringement." *WiAV Networks*, 2010 WL 3895047, at *3.  Accordingly, the Court should sever each of these Counts by Defendant group.[13]

---

[13]  *See also Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 263 (E.D. Tex. 2007) (where plaintiff asserted patent infringement claims against "three primary defendants, each of which has its own [accused] system," court granted motion to sever because "[a]llegations of infringement against two unrelated parties based on different acts do not arise from the same transaction" (internal quotation marks and citation omitted)).

**D.      Plaintiffs' Claims Against the Three Defendant Groups Should Be Severed To Protect Defendants from Undue Prejudice**

Even if Plaintiffs' joinder of the Defendants somehow met the requirements of Section 299(a), which it does not, the Court nevertheless should exercise its discretion under Federal Rule of Civil Procedure 21[14] and sever the claims against Defendants "for at least two reasons: (l) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the . . . Defendants."  *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002).[15]

Plaintiffs allege infringement of fifteen patents comprising almost 400 claims. Although Plaintiffs have limited these claims somewhat by asserting mostly method claims, even with this limitation, there are still 229 claims at issue (*i.e.*, all 209 method claims, plus 20 system claims drawn from the '677, '392, and '011 Patents).  Moreover, the fifteen patents in this case involve dramatically different technologies that can only loosely be grouped into five general categories.   (*See* Ex. A.)   Indeed, it is undisputed that Defendants do not all use the same technologies, with Sprint using CDMA technology, for example, and AT&T and T-Mobile using

---

[14]      *See Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011) (holding that, even if Rule 20 requirements were satisfied, a court may exercise its discretion and sever defendants "to avoid causing prejudice and unfairness to [d]efendants, and in the interest of justice"); *Gary v. Albino*, No. 10cv886 (NLH), 2010 WL 2546037, at *3 (D.N.J. June 21, 2010) ("Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, the Rule may also be invoked to prevent prejudice or promote judicial efficiency." (internal quotation marks omitted) (collecting cases)); Richard D. Freer, Moore's Federal Practice – Civil § 21.02[1] (3d ed. 2007) ("The courts have properly concluded that they may issue orders under Rule 21 even in the absence of misjoinder or nonjoinder of parties, to structure a case for the efficient administration of justice.").

[15]      *See also Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995) (noting that, under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice"); *see also Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) (granting motion to sever where, *inter alia*, defendant "may be prejudiced if it [was] required to defend itself in the same trial as [another defendant]").

GSM technology.[16]   Under these circumstances, "[t]he infringement issues will vary from product to product as they will invariably contain different components, from different manufacturers, with different specifications, that work in different ways," *WiAV Networks*, 2010 WL 3895047, at *3, and allowing joinder of Defendants would be inefficient and would create a high risk of jury confusion.  In fact, these risks are particularly acute here, where a multitude of largely unrelated patents and claims have been asserted, and Defendants therefore will have to present a large volume of complicated technical information relating to each of their unique products and services.[17]

Furthermore, "joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony."  *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).  Defendants are unrelated companies that separately sell competing products and services, and, accordingly, they will present independent evidence related to their

---

[16]   *Compare*   http://www.sprint.com/business/newsletters/articles/qaEvdo_federal02.html (discussing Sprint's use of CDMA technology) (Ex. F) *with* http://www.wireless.att.com/learn/why/technology/mobile-broadband-and-GSM.jsp (discussing AT&T and T-Mobile's respective use of GSM technology) (Ex. G); *see also* http://techtips.salon.com/cdma-vs-gsm-cell-phone-service-20419.html   (noting   that "[w]ithin the United States, cellphone carriers that operate on the CDMA network are Sprint and Verizon" while "AT&T and T-Mobile use the GSM network") (Ex. H); http://www.pcmag.com/article2/0,2817,2394639,00.asp (stating that AT&T uses a GSM network while Sprint uses a CDMA network) (Ex. I).

[17]   As aptly explained by one commentator, "asserting too many claims" is one factor that results in unnecessary complexity in patent cases.  *See* Joseph N. Hosteny, "Litigators Corner: How to Simplify a Trial," *Intellectual Property Today*, at 1 (Feb. 2003) (available   at   http://www.hosteny.com/archive/hosteny%2003-00.pdf)   (Ex   J).    In explaining that a party should avoid asserting more claims than necessary, Mr. Hosteny cited an example from one of his cases:

The patent asserted against our client included no less than ninety-eight claims! Trying so many claims, or even just a portion of them, would have been a nightmare. Can you imagine explaining to the jury the differences between ninety-eight claims— or even twenty or thirty of them?  An ordinary fact-finder, whether a judge or a jury, simply cannot absorb so much detail.

*Id.*  Here, Plaintiffs have asserted not ninety-eight, but *229* claims.  Quite simply, trying all of those claims in one case would be untenable.

different systems and technologies.[18]  This potential confusion and prejudice is exacerbated by

the fact that at least two counts of the Complaint are asserted against different subsets of

Defendants.[19]

        In sum, given the numerous individualized issues and unique defenses presented

by the multiplicity of patents and technologies at issues here,[20] combining all of these complex

issues and defenses into a single trial "could lead to confusion of the jury" and create a risk of

"guilt by association and spillover prejudice."  *Deskovic v. City of Peekskill*, 673 F. Supp. 2d

---

[18]    Indeed, Plaintiffs must acknowledge that their claims will involve different legal defenses and evidentiary questions given that Plaintiffs have alleged that only one Defendant (AT&T) had knowledge and intent with respect to one of the patents-in-suit. (*See* Count XIV.)  No such claims were made regarding any other Defendant or any other patent.

[19]    Count VII (the '737 Patent) is not asserted against AT&T, and Count X (the '073 Patent) is not asserted against Sprint.

[20]    Plaintiffs have made this case even more complicated by asserting patents involving such a wide range of technologies.  Defendants are thus likely to ask the Court to consider further strategies to effectively manage the case including severance early in the case based on technological groupings, to reduce complication for the Court, prejudice to Defendants, and ultimately confusion of the jury.  Indeed, Rule 21 permits the Court to sever Plaintiffs' claims based on the category of technology at issue.  *See* Fed. R. Civ. P. 21 ("*The court may also sever any claim against a party.*") (emphasis added).  Courts have invoked Rule 21 in support of severance where, as here, the action involves divergent patents and divergent accused functionalities.  Plaintiffs currently assert more than 200 claims from fifteen patents that span at least five different technological categories.  Those fifteen patents were issued over the period between 1994 and 2011 to a number of different entities around the world, have numerous sets of inventors and completely distinct sets of documents relating to conception and reduction to practice, and were conceived in a number of eras involving very different states of the relevant technological arts.  Pursuing all fifteen patents in a single case will not merely pose logistical hurdles, but is likely to be overwhelming for the Court, the Defendants, and ultimately the jury.  For example, developing and presenting a case regarding the invalidity, alleged infringement, and potential damages associated with each of those categories of patents will entail a distinct group of documents and witnesses for each category.  Additionally, the burden on the Court resulting from the large and distinct number of claim construction disputes, discovery issues, and dispositive motions, all with associated technological complexities, is sure to be staggering.  Because Plaintiffs have not yet served their infringement contentions, the full extent to which the accused products and/or services at issue in this case will diverge is currently unclear.  For that reason, Defendants cannot yet make a recommendation to the Court as to how best to proceed most efficiently beyond the relief already requested in the instant motion to sever, which is a critical first step.  Defendants reserve the right to request further severance and/or phasing of the case(s) based on the divergence of technologies likely at issue in this case at an appropriate time.

154, 171 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).[21]   Moreover,

severance is warranted at this juncture to promote efficient and effective handling of the case

going forward.   In particular, given Defendants' divergent technologies, vendors, and systems,

severance will avoid confusion and inefficiency during the discovery process as Defendants each

collect and produce different documentary evidence and witnesses.   Therefore, regardless of

whether Plaintiffs meet the minimum legal requirements for joinder under Section 299(a) (which

they do not), the Court should exercise its discretion under Rule 21 to sever the claims brought

against the three Defendant groups.   Doing so would not cause prejudice to Plaintiffs and would

avoid causing problems of jury confusion and judicial inefficiency.[22]

## II.   Plaintiffs Are Separate Entities that Do Not Jointly Own Any of the Patents-in-Suit and, Accordingly, the Court Should Sever Plaintiffs' Claims into Separate Lawsuits

Rule 20 permits joinder of plaintiffs if their claims "[1] arise from the same

transaction, occurrence, or series of transactions or occurrences, and (2) a question of law or fact

common to all plaintiffs . . . will arise in the action."   *Boretsky v. Governor of New Jersey*, 433 F.

App'x 73, 77 (3d Cir. 2011) (citing Fed. R. Civ. P. 20(a)).   "Plaintiffs must satisfy both prongs of

this test.   If they do not, 'the district court may sever the misjoined plaintiffs, as long as no

substantial right will be prejudiced by the severance.'"   *Abdelkarim v. Gonzales*, No. 06-14436,

2007 U.S. Dist. LEXIS 31407, at *13 (E.D. Mich. Apr. 30, 2007) (citation omitted).   "The

---

[21]   *See Intel Corp. v. Commonwealth Sci. & Indus. Res. Org.*, C.A. Nos. 06-551, 06-549, 06-550, 07-204, 06-324, 2008 WL 5378037, at *5 (E.D. Tex. Dec. 23, 2008) ("While having multiple trials will always create some inefficiency, proceeding to trial on liability and damages simultaneously in this many cases with this many parties would undoubtedly confuse the issues and the jury. . . . Combing the fourteen damages cases into a single trial would create the potential for undue prejudice, confusion, and ultimately inefficiency.").

[22]   Defendants note that, notwithstanding the grant of their severance motion, they of course will coordinate with each other, with the Plaintiffs, and with the Court on discovery and pre-trial matters to promote judicial efficiency and to help ensure that each case proceeds smoothly to trial.

decision to sever lies within the Court's sound discretion." *Id.* To satisfy the "same transaction or occurrence" test, the parties seeking to be joined must assert more than merely "'similar claims.'"[23]  In addition, "the requirement that claims arise from the same series of transactions or occurrences is not met where Plaintiffs' allegations against the Defendant rest upon distinct claims and independent sets of facts, even if Plaintiffs' claims share common legal and factual issues." *Allen v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00121-GEB-CKD, 2012 WL 948713, at *2 (E.D. Cal. Mar. 20, 2012) (internal quotation marks, alterations, and citations omitted)).

Here, thirteen counts of the Complaint (Counts I–V and VIII–XV) are asserted solely by Plaintiff IV I based on thirteen patents, and two counts (Counts VI and VII) are asserted solely Plaintiff IV II based on two additional patents.  The two patents asserted in Counts VI and VII are unrelated to the thirteen patents asserted in the other counts.[24]  They involve separate and distinct technologies, as demonstrated by Exhibit B.  Plaintiff IV II does not allege any connection between its claims and the remaining counts, or the patents and technologies accused therein.  (*See* Ex. A.)  Plaintiffs do not allege that they jointly own any of the patents-in-suit, and the Complaint does not include any allegation of common ownership between the two Plaintiffs.

---

[23]   *See Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 & n.1 (Fed. Cl. 2004) (collecting cases holding, for example, that "a loan made to the plaintiff by one defendant was unrelated to similar loans made to the plaintiff by other defendants and that joinder was therefore improper" (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988)); "consumers could not bring single action despite all allegedly having been injured by products containing [the same drug]" (citing *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640-41 (D. Nev. 2001)); and "employees could not be joined in a single suit despite claiming discrimination against them derived from a single corporate policy" (citing *Grayson v. K-Mart, Corp.*, 849 F. Supp. 785, 788-89 (N.D. Ga. 1994))).

[24]   Count VI accuses "411 service for wireless carriers," and Count VII accuses "customer websites that enable customers to make changes to their service plans and/or personal information over the Internet."

Plaintiffs' claims should be severed because they do not arise from the same transaction, occurrence, or series of transactions or occurrences. "[A] right to relief relates to or arises out of the 'same transaction or occurrence' only if it involves a single event or a related series thereof." *See Franconia Assocs.*, 61 Fed. Cl. at 336. Plaintiffs' claims do not meet this test. To the contrary, the claims asserted by IV II involve accused products or services completely different from those at issue in the claims asserted by IV I. As discussed above, because these claims involve different accused products or services, they necessarily do not involve a single event or series of events. The various claims are based on different patents, raise unique issues regarding distinct technologies and systems, and will require variant discovery, involve different groups of witnesses, and present separate defenses.[25] Under these circumstances, the claims should be severed.

Finally, even if joinder of Plaintiffs were permissible, severance is required to avoid prejudice and confusion. *See Gammons v. Real Prop. Inv. Servs.*, No. CV-10-8081-PCT-LOA, 2010 U.S. Dist. LEXIS 139930, at *8 (D. Ariz. Aug. 9, 2010) (noting that Rule 21's "on just terms" requirement means that "[e]ven if the requirements of Rule 20(a) are satisfied, a district court may properly sever the plaintiffs to avoid prejudice to the parties or confusion to the jury" (internal citations omitted)). Severance would not result in prejudice to Plaintiffs, because Plaintiffs are still able to prosecute a timely claim if they re-file against defendants separately.[26]

---

[25]   For example, as set forth in Defendants' motion to dismiss, it is already apparent that one of Plaintiff IV I's claims raises issues of standing that are not implicated in Plaintiff IV II's claims.

[26]   *Cf. Morgan v. Cohen*, Case No. 2:11-cv-11780, 2011 U.S. Dist. LEXIS 64407, at *10-11 (E.D. Mich. June 16, 2011) (holding that the phrase "on just terms" in Rule 21 means "without gratuitous harm to the parties," and finding that dismissal based upon misjoinder was warranted where there was no harm apparent from the record and venue might lay elsewhere); *Harris v. Gerth*, Case No. 08-CV-12374, 2008 U.S. Dist. LEXIS

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion and sever both the cases against the three Defendant groups and the cases brought by the two Plaintiffs in the manner set forth in Exhibit A.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jennifer Ying

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jying@mnat.com

*Attorneys for T-Mobile USA, Inc., Nextel Operations, Inc. and Sprint Spectrum, L.P.*

OF COUNSEL:

Josh Krevitt
Benjamin Hershkowitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Attorneys for T-Mobile USA, Inc.*

SEITZ ROSS ARONSTAM & MORITZ LLP

/s/ Collins J. Seitz, Jr.

_____
Collins J. Seitz, Jr. (#2237)
100 South West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com

*Attorneys for AT&T Mobility LLC and SBC Internet Services Inc.*

OF COUNSEL:

Bryant C. Boren, Jr.
Christopher W. Kennerly
Kevin Cadwell
BAKER BOTTS, LLP
620 Hansen Way
Palo Alto, CA 94304-1014
(650) 739-7500

---

104921, at *17 (E.D. Mich. Dec. 30, 2008) ("At least three judicial circuits have interpreted 'on such terms as are just' to mean without 'gratuitous harm to the parties.' Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice." (internal citations omitted)).

Brian C. Riopelle
David E. Finkelson
Derek H. Swanson
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000

Mark Varboncouer
Amy L. Signaigo
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100

*Attorneys for Sprint Spectrum LP and Nextel Operations Inc.*

May 3, 2012
5905721.2

### CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 3, 2012, upon the following individuals in the manner indicated:

Joseph J. Farnan, III, Esquire                                    *BY ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Martin J. Black, Esquire                                          *BY ELECTRONIC MAIL*
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
*Attorneys for Plaintiffs*

Jeffrey B. Plies, Esquire                                         *BY ELECTRONIC MAIL*
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
*Attorneys for Plaintiffs*

Stephen J. Akerley, Esquire                                       *BY ELECTRONIC MAIL*
DECHERT LLP
2440 W. El Camino Real Suite 700
Mountain View, CA 94040-1499
*Attorneys for Plaintiffs*

/s/ Jennifer Ying
_____
Jennifer Ying (#5550)