

December 10, 2013

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3556

      Re: *Intellectual Ventures I LLC, et al. v. AT&T Mobility LLC, et al.,*
            **(Case No. 12-cv-193-LPS and 13-cv-1631, 32, 33, 34, 35, 36, and 37-LPS)**

Dear Judge Stark:

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV"), seek an Order requiring Defendants to elect five prior art references and three obviousness combinations per unique patent specification at the time defendants submit their invalidity contentions under the First Scheduling Order (D.I. 93). IV also seeks resolution of certain disputes regarding an appropriate Protective Order ("PO").

I.     **The Court Should Limit Defendants' Prior Art References.**

On September 17, 2013, the Court ordered IV to select five claims per unique patent specification to assert against each Defendant. *See also*, First Scheduling Order (D.I. 93). On November 7, 2013, IV asked Defendants to agree to limit their prior art references to 5 references and 3 obviousness combinations per unique patent specification. Defendants refused, contending it is too early to limit prior art references before they know which claims IV will elect. IV has not asked Defendants to make their election now. IV simply requests that the limits be in place at the time Defendants serve their invalidity contentions on February 13, 2014.

It is common practice to streamline a case by limiting the number of prior art references and this Court has done so in the past. In *Intellectual Ventures I LLC v. Check Point Software Techs.*, No. 10-1067, the Court imposed limits on the defendants' use of prior art references in the same way that it had limited the plaintiff's asserted claims. Feb. 22, 2012 Telephonic Hearing, at 19:3-20:7 (Ex. A). And in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-1371, 2006 WL 2724879, at *6 (D. Del. Sept. 20, 2006), this Court limited the defendants to seven prior art references, which was the same number of claims asserted in that case. Other courts have similarly required accused infringers to reduce the number of prior art references. *See, e.g., SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-cv-497 (E.D. Tex. Mar. 3, 2010) (requiring defendants to reciprocally reduce the number of prior art references from 166 to 40 within ten days after plaintiff made its election of claims) (Ex. B).

The Court should apply a similar limit in this case, commensurate with the limit imposed on IV's asserted claims and on a timeline that saves judicial and party resources.

## II. Defendants Cannot Justify the Heightened Protections They Seek in the PO.

### A. Defendants seek to allow their in-house counsel special access to IV's license and settlement agreements, while limiting IV's choice of experts.

The parties' first dispute is whether Defendants are entitled to a special provision allowing in-house counsel to review license and settlement agreements. *See* Ex. C, ¶ 6. Such agreements would be the *only* confidential document any in-house counsel is allowed to review. Defendants justify their demand for special treatment by saying it would facilitate settlement negotiations, but it would only put Defendants' in-house counsel in a better bargaining position than IV's, who would not have access to Defendants' confidential financial or technical documents. IV has a strong interest in maintaining the confidentiality in its licenses and a duty to its licensees to maintain the confidentiality of its license terms.

IV has suggested to Defendants the solution this Court used in *Intellectual Ventures I LLC v. Check Point Software Tech.*, No. 10-1067, under which Defendants could approach IV on a case-by-case basis if they wish to show in-house counsel particular license agreements for the purpose of settlement negotiations. If IV refuses to allow the Defendant's in-house counsel to view the agreement, Defendant may petition the Court for relief. *See* Nov. 3, 2011 Telephonic Hearing, at 17:10-19:14 (Ex. D). This compromise addresses Defendants' concerns while respecting IV's right to maintain its settlement and licensing agreements in the strictest confidence.

The parties also dispute whether Defendants are entitled to a provision prohibiting the parties from letting confidential information leave the United States. Defendants raised this concern on November 10, after the parties' meet-and-confer and over two weeks after the initial deadline to submit a PO in this case. IV simply requested an exception for experts or consultants located outside the United States. Defendants refused without reason.

The provision the Defendants request is unreasonable. The technology in this case is international in scope, in some cases adopted by European standards setting bodies. Many of the most qualified experts and consultants are European. IV should be allowed to retain the most qualified experts it can identify, regardless whether that expert is located in the United States.

### B. Defendants seek excessive protection on source code they may not even produce.

Three of the parties' disputes deal with source code. The first is whether there should be an arbitrary limit on the number of experts who may review a party's (or a third party's) source code. Defendants want to arbitrarily limit the number to three. *See* Ex. C, ¶ 8. Such a limit is unnecessary. As the Court has recognized, the patents in this case touch on several aspects of wireless data transmission technology. IV may need to retain multiple consultants to analyze the various technology areas. Defendants will already be able to review the credentials and object to each person who seeks to become a "SOURCE CODE QUALIFIED PERSON." *See* Ex. C ¶ 9. There is no reason for an arbitrary limit on the number of source code qualified experts when Defendants have a mechanism for raising their concerns on a case-by-case basis.

The second dispute is the location of source code production and review. (Ex. C, ¶32(b)). IV wants each Defendant to produce its code in one geographic region, specifically, the office of each Defendant's outside counsel in, or closest to, Silicon Valley, CA, just as this Court ordered in, *Intellectual Ventures I LLC, et al. v. Altera Corp., et al.*, No. 10-1065 (LPS). *See,* July 10, 2012 Telephonic Hearing, at 27:16-28:7 (Ex. E). Defendants want to produce the code at an unspecified office of each outside counsel.

Sprint, for example, desires to produce its code at its outside counsel's office in Wilmington, DE, and U.S. Cellular wants to produce in Chicago, IL. Defendants' approach will force IV's counsel and experts to fly all over the country to review each Defendant's source code, while it would be just as easy for each Defendant to host the code at its outside counsel's office nearer a central location. Moreover, of all the Defendants, *only AT&T has represented that it intends to produce any source code in this litigation*, and AT&T stated it would have agreed to IV's version of Paragraph 32(b), requiring production near Silicon Valley. The Defendants that oppose IV's proposal have not even stated their intent to produce source code and their opposition should carry no weight.

The final source code dispute regards limits imposed on printing source code. (Ex. C, ¶32(f)). IV will need to print portions of Defendants' (or a third party's) source code to prove its infringement claims, and cannot predict how much code it will need. Nor can IV anticipate how Defendants' (or a third party's) source code will be organized—single functions might stretch beyond 10 pages. Yet Defendants want to limit IV to printing no more than 10 consecutive pages, and no more than 300 total pages per "technology area," without seeking special permission. (During the meet-and-confer, Defendants were unable to define "technology area"). While any printing limit is inherently arbitrary, the limits Defendants propose are clearly inadequate given that many, if not all, aspects of the patents in suit are implemented by source code. IV's proposal of 50 consecutive/1500 total pages is more likely to provide IV with the evidence to which it is entitled, while avoiding disputes about whether it should be permitted to exceed pre-set limits. Indeed, this Court has ordered larger printing limits than requested by IV in past cases. *See, e.g., Clouding IP LLC v. Google, Inc., et al.*, No. 12-639 (LPS); 12-641 (LPS); 12-642 (LPS), March 12, 2013 Telephonic Hearing, at 20:22-21:2 (ordering 300 pages per patent) (Ex. F).

### C. **Defendants prosecution bar is overly broad.**

Defendants seek a prosecution bar that is overly broad and unduly limits IV's litigation counsel from participating in quasi-adversarial proceedings before the PTO. *See* Ex. C, ¶ 33. Prosecution bars are the exception, not the rule, and it is Defendants' burden to prove both a particularized need for the bar, and that the scope of any proposed bar is reasonable. *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflects the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank*, 605 F.3d at 1381. Defendants' only basis for seeking the bar is a speculative concern regarding the use of technical information produced in this litigation during an as yet non-existent proceeding before the PTO. Such speculative concerns are not a proper basis for a prosecution bar.

IV proposed including a prosecution bar that did not apply to post-grant proceedings before the PTO. This limited bar, *while still unwarranted*, would at least have permitted IV to use its counsel of choice in PTO activities such as reexaminations and *inter partes* reviews. Defendants' broad bar would prejudice IV in that it could not rely on the same counsel to defend it before the PTO and this Court. This could result in inconsistent positions in two forums.

                                                                 Respectfully submitted,

                                                                 /s/ Brian E. Farnan

cc: Counsel of Record (via E-Filing)         Brian E. Farnan