IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-193-LPS |
| | : | |
| AT&T MOBILITY, LLC, AT&T | : | |
| MOBILITY II LLC, NEW CINGULAR | : | |
| WIRELESS SERVICES, INC., SBC | : | |
| INTERNET SERVICES, INC., | : | **UNSEALED ON** |
| WAYPORT, INC., AND CRICKET | : | **AUGUST 31, 2016** |
| WIRELESS LLC, | : | |
| | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 13-1632-LPS |
| | : | |
| T-MOBILE USA, INC. AND T-MOBILE | : | |
| US, INC., | : | |
| | : | |
| Defendants. | : | |

---

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 15-799-LPS |
| | : | |
| AT&T MOBILITY LLC, AT&T | : | |
| MOBILITY II LLC, AND NEW | : | |
| CINGULAR WIRELESS SERVICES, | : | |
| INC., | : | |

---

INTELLECTUAL VENTURES I LLC,          :
                                      :
                    Plaintiff,        :
                                      :
          v.                          :          Civ. No. 15-800-LPS
                                      :
T-MOBILE USA, INC., and               :
T-MOBILE US, INC.,                    :
                                      :
                    Defendants.       :
_____

Joseph J. Farnan, III, Brian E. Farnan, FARNAN LLP, Wilmington, DE.

Martin J. Black, DECHERT LLP, Philadelphia, PA.

Jeffrey B. Plies, DECHERT LLP, Austin, TX.

Stephen J. Akerley, Justin F. Boyce, DECHERT LLP, Mountain View, CA.

       Attorneys for Plaintiff Intellectual Ventures I LLC.


Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP, Wilmington Delaware.

Bryant C. Boren, Jr., Jon V. Swenson, Gina A. Bibby, BAKER BOTTS L.L.P., Palo Alto, CA.

Roger Fulghum, BAKER BOTTS, Houston, TX.

Jeffrey Baxter, BAKER BOTTS, Dallas, TX.

Robert Maier, Eric Faragi, BAKER BOTTS, New York, NY.

Nicholas Schuneman, BAKER BOTTS, Austin, TX.

       Attorneys for Defendants AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular
       Wireless Services, Inc., SBC Internet Services, Inc., Wayport, Inc., and Cricket Wireless
       LLC.

Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

Josh Krevitt, Benjamin Hershkowitz, GIBSON, DUNN & CRUTCHER LLP, New York, NY.

Mark N. Reiter, GIBSON, DUNN & CRUTCHER LLP, Dallas, TX.

Brian M. Buroker, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C.

Alison R. Watkins, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA.

     Attorneys for T-Mobile USA, Inc. and T-Mobile US, Inc.

## MEMORANDUM OPINION

August 25, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION

Pending before the Court in these four related patent infringement actions are motions to

dismiss.  In the earliest of these actions, C.A. No. 12-193, Defendants AT&T Mobility LLC,

AT&T Mobility II LLC, and New Cingular Wireless Services, Inc. (collectively, "AT&T"), as

well as SBC Internet Services, Inc., Wayport, Inc., and Cricket Wireless (together with AT&T

hereinafter referred to as "Defendants") move to dismiss Count VIII of the complaint, which

alleges infringement of U.S. Patent No. 5,960,032 (the "'0032 patent").  (*See* C.A. No. 12-193

D.I. 676)[1]  This first motion is based on the purported lack of prudential standing of plaintiff

Intellectual Ventures I LLC ("IV") at the time IV filed its original complaint in 2012.  (D.I. 676)[2]

T-Mobile USA, Inc. and T-Mobile US, Inc. (collectively, "T-Mobile") filed an almost identical

motion to dismiss based on lack of prudential standing in the action IV filed against T-Mobile in

2013 (together with C.A. No. 12-193 hereinafter referred to as the "Original Actions").  (*See*

C.A. No. 13-1632 D.I. 537)  After the Court, in 2013, dismissed IV's claims of infringement of

the '0032 patent for lack of prudential standing, and IV purchased the '0032 patent from its prior

owner in August 2013 (D.I. 701 at 1), IV in 2015 filed new lawsuits (the "2015 Actions") against

AT&T (C.A. No. 15-799 D.I. 1) and T-Mobile (C.A. No. 15-800 D.I. 1) asserting just the '0032

patent.  AT&T's and T-Mobile's motions to dismiss these 2015 Actions (C.A. No. 15-799 D.I. 8;

---

[1]Except where otherwise noted, all references to the docket index in this Memorandum Opinion are to C.A. No. 12-193.

[2]Defendants' motion was originally directed to the lack of both constitutional and prudential standing.  (*See* D.I. 677 at 14-15)  After IV explained at length the basis for its constitutional standing (*see* D.I. 701 at 14-17), Defendants' withdrew the portion of the motion directed to constitutional standing (*see* D.I. 707 at 1 n.1).

1

C.A. No. 15-800 D.I. 7) are based on the contention that these lawsuits are duplicative of the claims asserting the '0032 patent in the Original Actions.

For the reasons set forth below, the Court will grant Defendants' and T-Mobile's motions to dismiss the '0032 patent claims from the Original Actions for lack of prudential standing. The Court will deny AT&T's and T-Mobile's motions to dismiss the 2015 Actions, which will no longer be duplicative of the Original Actions.

## II.    BACKGROUND

On July 4, 2005, Hong Kong University of Science and Technology ("HKUST") and Lushan LLC ("Lushan") entered into a license agreement (the "License Agreement"), which licensed the '0032 patent to Lushan. (D.I. 43 Ex. A; *see also* D.I. 677 at 3; D.I. 701 at 5) On February 7, 2012, Lushan merged with IV. (D.I. 703 at 3) On February 16, 2012, IV filed suit against various defendants alleging infringement of a number of patents, including the '0032 patent. (D.I. 1 at 16-17) IV filed a First Amended Complaint on May 7, 2012, again asserting infringement of numerous patents, including the '0032 patent. (*See* D.I. 20)

Defendants and T-Mobile moved to dismiss the claims of the Original Actions asserting the '0032 patent based on IV's lack of standing. (*See* D.I. 42; D.I. 60 at 53-56) Defendants and T-Mobile essentially argued that because the License Agreement reserved to HKUST certain rights related to the '0032 patent – including approval over settlement agreements, consultation rights, a personal research and educational license, and a limited right to sub-license to Hong Kong-based companies – IV lacked all substantial rights in the '0032 patent and, therefore, could not sue for infringement of the '0032 patent without joining HKUST. (*See* D.I. 41) After hearing oral argument on March 18, 2013, the Court granted the motions to dismiss.

Ruling from the bench, the Court explained:

> The patent owner HKUST has a not insubstantial bundle of
> rights, including the right to grant Hong Kong-based companies a
> nonexclusive license, a right to consultation regarding
> maintenance, prosecution, and enforcement action[s], a right to
> reject plaintiffs' assignments of licenses, a right to profits, and a
> right to make and use for clinical and academic purposes the
> patent.  Most especially and most troubling to the Court in the
> context of this multi-factor analysis is Hong Kong University's
> right to veto the settlements, including settlements of this
> litigation, a right that is [set out in the License Agreement]. . . .
>
> That veto power is not as narrow as the plaintiffs argue in
> their briefing.  While I do not think that the precise risk of multiple
> lawsuits that the cases discuss is present here, something analogous
> to it in my view is present in that the defendant or the defendants
> here could do everything reasonable and necessary sitting across
> the table from the plaintiffs and think in good faith that they have
> resolved this case only to find out that an entity that is not at the
> table could say, in exercising its rights under the agreement, no,
> this case will go forward.
>
> . . .
>
> [P]laintiffs are under the belief that they have the power to
> compel HKUST to be joined in this lawsuit.  So for all those
> reasons, I will grant the motion [to dismiss] but [it is] . . . without
> prejudice to plaintiffs' right to re-file and join HKUST as a party.  I
> think that is the appropriate resolution and I don't see any fair basis
> for dismissal with[] prejudice.

(D.I. 60 at 65-67)

Although the Court granted IV leave to refile its claims for infringement of the '0032

patent, so long as IV also joined HKUST in the suit, IV chose never to do as the Court permitted

it to do.  Rather than join HKUST as a party, IV in August 2013 purchased the '0032 patent from

HKUST.  (*See* D.I. 86 at 2)  Specifically, IV entered into a patent purchase agreement (the

"Purchase Agreement") with HKUST on August 2, 2013 in order to purchase all rights, title, and

interest in the '0032 Patent from HKUST. (D.I. 703 at 3)  Then, on September 23, 2013, IV filed an unopposed Motion for Leave to filed a Second Amended Complaint, in which it noted that it had acquired the '0032 patent from HKUST on August 2, 2013. (*See id.* at 2)  On October, 1, 2013, the Court granted IV's unopposed motion (*see* D.I. 90), and that same day IV filed its Second Amended Complaint (D.I. 91).

On March 5, 2014, IV filed a Motion for Leave to Filed a Third Amended Complaint. (D.I. 203)  The Court granted IV's motion on September 8, 2014. (D.I. 296)  IV filed its Third Amended Complaint on September 23, 2014, again asserting the '0032 patent against Defendants. (D.I. 301)

IV then filed a Fourth Amended Complaint on November 13, 2014, again asserting the '0032 patent. (D.I. 332)  While Defendants did not oppose the filing of the Fourth Amended Complaint, they "reserve[d] the right to answer, move or otherwise respond to the amended complaints." (D.I. 677 Ex. A)

On June 5, 2015, the Federal Circuit issued an opinion in the case of *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379 (Fed. Cir. 2015), *cert. denied*, 136 S.Ct. 897 (2016). In *Alps South*, the Federal Circuit reversed a district court's denial of a motion to dismiss for lack of standing in a patent case in which the patentee lacked prudential standing at the time it filed suit and only obtained standing as a result of execution of a post-filing agreement with the patent owner. Therefore, as IV explains: "As a result of the *Alps* opinion, and out of an abundance of caution, on September 9, 2015, IV filed two new lawsuits in the District of Delaware [i.e., the 2015 Actions], alleging infringement of the '0032 Patent against AT&T and T-Mobile." (D.I. 701 at 6-7)

4

Thereafter, Defendants and T-Mobile moved to dismiss the '0032 patent infringement claims (Claim VI) from the Fourth Amended Complaint. (*See* D.I. 332 at 17-18)  AT&T and T-Mobile also moved to dismiss the 2015 Actions.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson*

5

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B.    Rule 12(h)(3)

Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir.1992); *see also id.* ("[A] Rule 12(h)(3) motion . . . may be asserted at any time and need not be responsive to any pleading of the other party.").

### C.    Standing

"Standing must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). If a plaintiff lacks standing at that time, the Court lacks subject matter jurisdiction and the case must be dismissed pursuant to Rule 12(b)(1). *See generally Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party "bringing the action bears the burden of establishing that it has standing." *Sicom*, 427 F.3d at 976.

Standing "is comprised of both constitutional and prudential components." *Oxford Assocs. v. Waste Sys. Auth. E. Montgomery County*, 271 F.3d 140, 145 (3d Cir. 2001). The requirement of constitutional standing derives from the Article III "case" or "controversy"

6

requirement, compelling "a plaintiff to demonstrate that he or she suffered [i] 'injury in fact,' that [ii] the injury is 'fairly traceable' to the actions of the defendant, and that [iii] the injury will likely be redressed by a favorable decision." *Id.* "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). Prudential standing requires, among other things, that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties. *See Hill ex rel. Hill v. Pennsylvania Dept. of Corr.*, 521 Fed. Appx. 39, 40 (3d Cir. 2013) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

A patent is "a bundle of rights which may be divided and assigned, or retained in whole or part." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991); *see also* 35 U.S.C. § 261 ("[P]atents, or any interest therein, shall be assignable in law by an instrument in writing."). While all such rights are initially held by the named inventor, they may be licensed or assigned to multiple parties, and when "a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name." *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir.2010). Accordingly, plaintiffs who "hold all legal rights to the patent as the patentee or assignee of all patent rights" can sue in their own name alone. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) ("Unquestionably, a patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own

7

name.").

Additionally, if a patentee transfers "all substantial rights" in the patent to an assignee,

"this amounts to an assignment or a transfer of title, which confers constitutional standing on the

assignee to sue for infringement in its own name alone." *Id.* at 1340; *see also Sicom*, 427 F.3d at

976; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) ("[W]here the

patentee makes an assignment of all substantial rights under the patent, the assignee may be

deemed the effective 'patentee' under 35 U.S.C. § 281 and thus may have standing to maintain

an infringement suit in its own name.").

Finally, exclusive licensees – those parties who hold "exclusionary rights and interests

created by the patent statutes, but not all substantial rights to the patent" – have constitutional

standing. *Morrow*, 499 F.3d at 1340. "However, these exclusionary rights 'must be enforced

through or in the name of the owner of the patent,' and the patentee who transferred these

exclusionary interests is usually joined to satisfy prudential standing concerns." *Id.* at 1340; *see*

*also Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007). Put another way,

"unlike an assignee that may sue in its own name, an exclusive licensee having fewer than all

substantial patent rights . . . that seeks to enforce its rights in a patent generally must sue jointly

with the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of CA, Inc.*, 248 F.3d

1333, 1347-48 (Fed. Cir. 2001) (finding "it was proper for IPD, as an exclusive licensee of fewer

than all substantial rights in the '202 patent, to add [licensor] as a party plaintiff"). "The patentee

is joined for the purpose of avoiding the potential for multiple litigations and multiple liabilities

and recoveries against the same alleged infringer." *Morrow*, 499 F.3d at 1340; *see also Int'l*

*Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007).

8

"By contrast, a bare licensee, i.e., a party with only a covenant from the patentee that it will not be sued for infringing the patent rights, lacks standing to sue third parties for infringement of the patent." *Propat*, 473 F.3d at 1193-94. "[A]n infringement action brought by a bare licensee must be dismissed. A bare licensee cannot cure its lack of standing by joining the patentee as a party." *Id.*

## III.   DISCUSSION

### A.   Waiver

IV contends that the Court should deny Defendants' and T-Mobile's motions to dismiss the '0032 patent claims from the complaints in the Original Actions because these parties waived their right to object to any lack of prudential standing. (*See* D.I. 701 at 13) The Court disagrees.

Even assuming prudential standing objections can be waived, *but see Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001); *In re Burlington Motor Holdings, Inc.*, 2002 WL 63595, at *2 (D. Del. Jan. 17, 2002); *see also Nesbit v. Gears Unlimited Inc.*, 347 F.3d 72, 77 (3d. Cir. 2003) ("[S]ubject matter jurisdiction is non-waivable, [and] courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt."), here there was no waiver. Instead, in responding to IV's inquiries regarding its plans to filed the Fourth Amended Complaint, AT&T's counsel expressly "reserve[d] the right to answer, move or otherwise respond." (D.I. 677 Ex. 1; D.I. 707 at 8)[3] So did T-Mobile. (D.I. **)

Moreover, as explained in more detail below, the *Alps South* decision provides a basis by

---

[3]Even if, arguably, one or more Defendants "waived" their right to object to lack of prudential standing in connection with any of the earlier amended complaints, IV did not rest on any of its earlier complaints, but instead chose to file a Fourth Amended Complaint. This new filing gave rise to certain rights in Defendants – and they did not waive those rights in relation to IV's new filing.

9

which the Court would (if necessary) exercise its discretion to excuse any waiver. AT&T

characterizes *Alps South* as a change in the law. (*See* D.I. 677 at 16)  IV acknowledges it was a

"case of first impression." (D.I. 701 at 6)  Under the circumstances, even had Defendants and/or

T-Mobile waived their right to raise prudential standing objections, after *Alps South* the Court

would nonetheless permit these defendants to raise these important issues and require IV to

demonstrate it has standing.

### B.    Dismissal of '0032 Patent from Original Actions Due to Lack of Prudential Standing

The Court already held in March 2013 that at that date – and, implicitly, at the date the

Original Actions were filed – IV lacked prudential standing to assert the '0032 patent. (*See* D.I.

60 at 65-67)  As shown in the quote reproduced above, IV lacked "all substantial rights" because

HKUST, then the owner of the '0032 patent, held substantial rights. (*See id.*)  The Court

dismissed the '0032 patent claims from the case "without prejudice" to IV's right to cure the

prudential standing defect by adding HKUST to the case. (*See id.* at 67)  IV never did so.

Instead, on August 2, 2013, IV purchased the '0032 patent from HKUST. (*See* D.I. 703 at 13)

After *Alps South*, however, this post-filing agreement between IV – a patent infringement

plaintiff who lacked all substantial rights in the patent on which it was suing at the time it filed

suit – and HKUST – the owner of the patent-in-suit, and holder of substantial rights in the patent-

in-suit, as of the date of the filing of the suit – cannot retroactively cure the prudential standing

defect. (*See* D.I. 677 at 11)  In *Alps South*, 787 F.3d at 1385-86, the Federal Circuit determined

that a licensee's lack of prudential standing at the outset of the litigation cannot be cured by

executing a *nunc pro tunc* agreement granting substantial rights to it later in the litigation. The

10

Court reasoned that "a party may not vindicate rights in court before the party actually possesses the rights." *Id.*; *see also Diamond Coating Tech., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 621 (Fed. Cir. 2016) (same). It added:

> Because [the plaintiff] possessed neither legal title nor all
> substantial rights at the outset of this litigation, our standing
> jurisprudence required that [the plaintiff] join the patent owner . . .
> as a co-plaintiff. Because [the plaintiff] failed to do so, we reverse
> the district court's denial of the motion to dismiss for lack of
> standing.

*Alps South*, 787 F.3d at 1386.

The same reasoning applied here leads to the conclusion that the claims asserting the '0032 patent must be dismissed from the Original Actions. As Defendants write, "Following *Alps South*, the law governing prudential standing in patent cases is clear: an exclusive licensee that did not have all substantial rights to a patent when it filed suit must join the patent owner and cannot obtain standing through a post-filing agreement." (D.I. 707 at 1) *See also Enzo APA & Son*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. . . . Inevitably, delay and expense would be the order of the day."); *see generally Schreiber Foods Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("[T]he general rule in federal cases is that a plaintiff must have initial standing and continue to have a personal stake in the outcome of the lawsuit.") (internal quotation marks omitted).

In response, IV insists that "as long as a court has the proper parties before it at the time

11

of judgment, a case will not be dismissed for lack of prudential standing during the course of the case." (D.I. 701 at 3) (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007; *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)) In IV's view, "[p]rudential standing can be cured any time before judgment." (D.I. 701 at 3) IV also cites Federal Rule of Civil Procedure 19, governing joinder, and suggests that the Court already joined HKUST as a party (with the Court's earlier motion to dismiss ruling) and that it was proper to subsequently dismiss HKUST as a party once it lacked any interest in the '0032 patent. (*See id.* at 11)

IV's contentions are unavailing. *Alps South* is clear that a defect in prudential standing that exists as of the filing of a patent infringement complaint cannot be cured by execution of an agreement between the patent owner and the plaintiff during the litigation. "*[N]unc pro tunc* assignments are not sufficient to confer retroactive standing." *Enzo*, 134 F.3d at 1093; *see also Alps South*, 787 F.3d at 1385 ("*Enzo* precludes us from expanding this practice to permit a plaintiff to cure a standing defect by executing a *nunc pro tunc* license agreement after filing a case.").; *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010) ("[J]urisdictional defect cannot be cured by . . . the subsequent purchase of an interest in the patent in suit.") (internal quotation marks omitted).

Instead, to cure the defect here IV had to have joined the patent owner as a party to the suit. *Schreiber*, on which IV relies, addresses a different situation. In *Schreiber*, 402 F.3d at 1202-03, the plaintiff owned the patent at the time it filed the original complaint, so it had standing at that time; only thereafter did the plaintiff temporarily lose standing. Here, by contrast, IV lacked prudential standing when it filed suit, and continued to lack it until it came to

12

own the patent. Therefore, it was only after August 2, 2013 that IV could file a complaint asserting the '0032 patent that would withstand a motion to dismiss for lack of prudential standing. Accordingly, because the Original Actions were filed in 2012 and 2013[4] – before August 2, 2013 – IV lacked prudential standing to assert the '0032 patent and the motions to dismiss directed to the Original Actions must be granted.

The dismissal this time is with prejudice. In light of *Alps South*, it would be futile for IV to amend its complaint in the Original Actions once again. HKUST no longer owns any interest in the '0032 patent. Moreover, IV has already been given the opportunity to cure the prudential standing defect by joining HKUST and declined to do so. Thus, although dismissal for lack of prudential standing is ordinarily without prejudice,[5] it is appropriate that this second dismissal for lack of standing be with prejudice.

### C.   Motions to Dismiss 2015 Actions as Duplicative

The Court now turns to the motions to dismiss the 2015 Actions. Defendants' argument for dismissal of the 2015 Actions rests on the premise that these actions are duplicative of the infringement claims asserting the '0032 patent in C.A. No. 12-193 and C.A. No. 13-1362. Defendants do not raise a standing argument in the 2015 Actions. Because the Court is

---

[4]The filing of the amended complaints does not alter the analysis. Amended complaints relate back to the filing of the original complaint that initiated the action. *See* Fed. R. Civ. P. 15(c).

[5]"[L]ack of standing is not an issue that goes to the merits of the underlying patent issues, [and] a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice." *H.R. Tech., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002); *see also Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ( "A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'").

dismissing the claims asserting the '0032 patent from C.A. No. 12-193 and C.A. No. 13-1362, the 2015 Actions are no longer duplicative.  Accordingly, Defendants' motions to dismiss the 2015 Actions will be denied as moot.

**CONCLUSION**

For the foregoing reasons, Defendants' and T-Mobile's motions to dismiss the claims asserting the '0032 patent from the Original Actions will be granted while AT&T's and T-Mobile's motions to dismiss the 2015 Actions will be denied as moot.  An appropriate Order follows.

14