## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-193-LPS |
| | : | |
| AT&T MOBILITY LLC; | : | |
| AT&T MOBILITY II LLC; | : | |
| NEW CINGULAR WIRELESS SERVICES, INC.; | : | |
| SBC INTERNET SERVICES, INC.; and | : | |
| WAYPORT, INC. | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| SIERRA WIRELESS AMERICA, INC., | : | |
| | : | |
| Intervenor. | : | |
| | : | |
| INTELLECTUAL VENTURES II LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-1631-LPS |
| | : | |
| AT&T MOBILITY LLC; | : | |
| AT&T MOBILITY II LLC; | : | |
| NEW CINGULAR WIRELESS SERVICES, INC.; | : | |
| SBC INTERNET SERVICES, INC.; and | : | |
| WAYPORT, INC., | : | |
| | : | |
| Defendants. | : | |

INTELLECTUAL VENTURES I LLC, :
:
           Plaintiff, :
:
           v. :    C.A. No. 13-1632-LPS
:
T-MOBILE USA, INC. and T-MOBILE US, INC., :
:
           Defendants. :
_____ :

INTELLECTUAL VENTURES II LLC, :
:
           Plaintiff, :
:
           v. :    C.A. No. 13-1633-LPS
:
T-MOBILE USA, INC. and T-MOBILE US, INC., :
:
           Defendants. :
_____ :

INTELLECTUAL VENTURES I LLC, :
:
           Plaintiff, :
:
           v. :    C.A. No. 13-1634-LPS
:
NEXTEL OPERATIONS, INC. and :
SPRINT SPECTRUM L.P., :
BOOST MOBILE, LLC, and :
VIRGIN MOBILE USA, L.P., :
:
           Defendants :
:
and :
:
SIERRA WIRELESS AMERICA, INC., :
:
           Intervenor. :
_____ :

INTELLECTUAL VENTURES II LLC,    :
    :
    Plaintiff,    :
    :
    v.    :    C.A. No. 13-1635-LPS
    :
NEXTEL OPERATIONS, INC. and    :
SPRINT SPECTRUM L.P.,    :
BOOST MOBILE, LLC, and    :
VIRGIN MOBILE USA, L.P.,    :
    :
    Defendants    :

---

    :
INTELLECTUAL VENTURES I LLC,    :
    :
    Plaintiff,    :
    :
    v.    :    C.A. No. 13-1636-LPS
    :
UNITED STATES CELLULAR CORPORATION, :
    :
    Defendant.    :

---

    :
INTELLECTUAL VENTURES II LLC,    :
    :
    Plaintiff,    :
    :
    v.    :    C.A. No. 13-1637-LPS
    :
UNITED STATES CELLULAR CORPORATION, :
    :
    Defendant.    :

Joseph J. Farnan, III, Brian E. Farnan, FARNAN LLP, Wilmington, DE
Martin J. Black, DECHERT LLP, Philadelphia, PA
Jeffrey B. Plies, DECHERT LLP, Austin, TX
Stephen J. Akerley, Justin F. Boyce, DECHERT LLP, Mountain View, CA

    Attorneys for Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE
Josh Krevitt, Benjamin Hershkowitz, GIBSON, DUNN & CRUTCHER LLP, New York, NY
Brian M. Buroker, GIBSON, DUNN & CRUTCHER LLP, Washington, DC
Alison R. Watkins, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA

    Attorneys for Defendants T-Mobile USA, Inc. and T-Mobile US, Inc.


Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE
Nicholas Schuneman, BAKER BOTTS LLP, Austin, TX
Bryant C. Boren, Jr., Jon Swenson, Gina A. Bibby, BAKER BOTTS LLP, Palo Alto, CA
Roger Fulghum, BAKER BOTTS LLP, Houston, TX
Jeffrey Baxter, BAKER BOTTS LLP, Dallas, TX
Robert Maier, Eric Faragi, BAKER BOTTS LLP, New York, NY

    Attorney for Defendants AT&T Mobility LLC, AT&T Mobility II LLC, New Cingular
    Wireless Services, Inc., SBC Internet Services, Wayport Inc., and Cricket Wireless LLC.


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE
Brian C. Riopelle, David E. Finkelson, Kristen M. Calleja, Derek H. Swanson, Andriana S. Daly,
Justin R. Lowery, MCGUIRE WOODS LLP, Richmond, VA
Mark Varboncouer, Amy L. Signaigo, MCGUIRE WOODS LLP, Chicago, IL
Rachelle H. Thompson, MCGUIRE WOODS LLP, Raleigh, NC

    Attorneys for Defendants Sprint Spectrum LP and Nextel Operations, Inc.

Gregory P. Williams, Steven J. Fineman, Katharine C. Lester, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE
Douglas Lewis, Savan N. Vaghani, John P. Wisse, SIDLEY AUSTIN LLP, Chicago, IL

      Attorneys for Defendant United States Cellular Corporation.


Thomas C. Grimm, Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Robert E. Krebs, Jennifer Hayes, Erik J. Birkeneder, NIXON PEABODY LLP, Palo Alto, CA
Ronald F. Lopez, NIXON PEABODY LLP, San Francisco, CA

      Attorneys for Intervenor Sierra Wireless America Inc.

---

## MEMORANDUM OPINION

December 30, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Defendants AT&T Mobility LLC; AT&T Mobility II LLC; New Cingular Wireless Services, Inc.; SBC Internet Services; Wayport Inc.; T-Mobile USA, Inc.; T-Mobile US, Inc.; Nextel Operations, Inc.; Sprint Spectrum, L.P.; Boost Mobile, LLC; Virgin Mobile USA, L.P.; United States Cellular Corporation; and Intervenor Sierra Wireless America Inc.'s (collectively, "Defendants") Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). (C.A. No. 12-193 D.I. 458)[1] ("Motion") Defendants contend that certain claims of U.S. Patent Nos. 6,115,737 (the "'737 patent"); 8,078,200 (the "'200 patent"); and 7,450,957 (the "'957 patent") are directed to patent-ineligible subject matter and are, therefore, invalid under 35 U.S.C. § 101.[2] For the reasons discussed below, the Court will grant Defendants' Motion.

## I. BACKGROUND

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("Plaintiffs") sued Defendants on February 16, 2012, alleging infringement of multiple patents, including the '737 patent, the '200 patent, and the '957 patent. (D.I. 1) The '737 patent, entitled "System and Method for Accessing Customer Contact Services over a Network," generally discloses methods that allow customers to access, control, and modify their services over a network. (*See* '737 patent at Abstract) The '200 and '957 patents, which share the same specification, generally disclose a method for screening text messages in a cell phone network. (*See* '200 patent at

---

[1]Unless otherwise noted, all citations to the docket are to C.A. No. 12-193-LPS.

[2]The motion originally included a challenge to U.S. Patent No. 7,343,011 (the "'011 patent"), but Plaintiffs later dismissed the '011 patent from the case. (*See* D.I. 599 at 1 n.2)

Abstract; '957 patent at Abstract) Both of these patents are entitled "System and Method for Blocking the Use of a Service in a Telecommunication System." Defendants' Motion challenges the patent eligibility of claims 7, 8, 9, and 14 of the '737 patent; claims 1, 3, 4, and 16 of the '200 patent; and claims 1, 10, and 11 of the '957 patent (collectively, the "Asserted Claims"). (*See* D.I. 459 at 1 n.1)

The parties initially completed briefing on Defendants' Motion on August 5, 2015. (D.I. 599) The Court heard oral argument on Defendants' Motion on November 24, 2015. (D.I. 718 ("Tr.")) Thereafter, following the issuance of several § 101 opinions by the Federal Circuit, the parties submitted several notices of supplemental authority and additional letter briefing, most recently in July 2016. (*See, e.g.*, D.I. 825; D.I. 826; D.I. 827; D.I. 828; D.I. 829; D.I. 830)

## II.    LEGAL STANDARDS

### A.    Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing

2

pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Thus, a court may grant a motion for judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482.

The Court may consider matters of public record as well as authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). The Court may also take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

The ultimate question of patent eligibility is an issue of law, making it an appropriate basis for a Rule 12(c) motion. *See In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 561 U.S. 593 (2010). The Federal Circuit has affirmed district courts that have granted motions for judgment on the pleadings based on § 101 challenges. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

3

### B.      Patent-Eligible Subject Matter

Pursuant to 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted). "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed at a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step 2"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

4

### 1. *Mayo* Step 1

At step 1, "the claims are considered in their entirety to ascertain whether their character *as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). Claims implemented purely in software are not necessarily directed to patent-ineligible abstract ideas under step 1. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("Software can make non-abstract improvements to computer technology just as hardware improvements can . . . . We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and necessarily analyzed at the second step of *Alice*, nor do we believe that *Alice* so directs."); *see also id.* at 1338 ("[W]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."); *id.* at 1339 ("Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by *logical structures and processes*.") (emphasis added).

At step 1, the Federal Circuit has distinguished claims that are "directed to *an improvement to computer functionality* versus being directed to an abstract idea." *Id*. at 1335 (emphasis added). *Enfish*, for example, found claims to be not abstract because the "plain focus of the claims is on an improvement to computer functionality itself," distinguishing such patent

5

claims from those involved in *Alice*, which involved "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. By contrast, in *Electric Power*, 830 F.3d at 1354, the Federal Circuit determined that certain claims *were* directed to an abstract idea because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Enfish* adds that a patent specification's disparagement of prior art or "conventional" implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than to an abstract idea. *See* 822 F.3d at 1337, 1339.

Courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits in conducting a step-1 analysis. *See id.* at 1337; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016))). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO*, 837 F.3d at 1313.

### 2. *Mayo* Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step-2 inquiry includes

6

consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an *ordered combination* of these limitations was patent-eligible under step 2. *Id.* at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.*

### 3. Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that

7

integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). The "concern that drives the exclusionary principle [i]s one of pre-emption." *Id.* That is, where a patent would preempt use of "basic tools of scientific and technological work," i.e., "[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For example, in *McRO*, 837 F.3d at 1315, in support of its conclusion that a claim was patent-eligible under step 1, the Federal Circuit held that limitations of the claim "prevent[ed] preemption of all processes for achieving automated lip-synchronization of 3-D characters." In *Bascom*, 827 F.3d at 1350, in support of the Court's conclusion that claims reciting "a specific, discrete implementation of the abstract idea of filtering content" were patent-eligible under step 2, the Federal Circuit explained that the claims did not preempt "all ways of filtering content on the Internet."

### 4.     Machine-or-Transformation Test

"[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). However, it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.* Under the machine-or-transformation test, a patent claim that "uses a particular machine or apparatus" may be patent-eligible if it does not "pre-empt uses of the principle that do not also use the specified machine or apparatus in the

8

manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008). In addition, "a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle" may be patent-eligible if it does not "pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article." *Id.*

## III.    DISCUSSION

### A.    Applicability of the Court's Claim Construction

The Court issued a memorandum opinion and order on claim construction on March 24, 2015. (D.I. 438) Plaintiffs argue that it would be improper for the Court to rely on its claim construction opinion in resolving Defendants' Motion because the Court's opinion refers to matters outside the pleadings. (*See* D.I. 524 at 2) Plaintiffs further argue that, if the Court nonetheless chooses to rely on its claim construction opinion in deciding the instant Motion, the Court should convert the Motion into a motion for summary judgment. (*See id.*) At oral argument, Plaintiffs again pointed out the Court's claim construction opinion would introduce extrinsic evidence that would be improper to consider in connection with a motion for judgment on the pleadings. Plaintiffs urged the Court not to rely on its claim construction opinion because, while patent eligibility is a question of law, the Court's conclusions during claim construction are at least partly based on factual determinations. (*See* Tr. at 50-52)

The Court disagrees with Plaintiffs. Claim construction is a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) ("[T]he interpretation and construction of patent claims . . . is a matter of law."), *aff'd*, 517 U.S. 370 (1996). As such, the Court may take notice of and rely on its claim construction opinion without

9

converting Defendants' Motion into a motion for summary judgment.

## B.    Ripeness

At the time the Motion was being briefed (between April and August, 2015), Plaintiffs

suggested that the time was not ripe for the Court to entertain a § 101 challenge, encouraging the

Court to wait until the case law was more settled and the factual record was more complete. (*See*

D.I. 524 at 3-4) Whether or not Plaintiffs' concern about the state of § 101 law was ever valid,

that concern plainly provides no basis now for the Court to defer ruling.[3]  There are also no

disputes of material fact that bear on the Court's § 101 analysis. (*Id.* at 1; *see also* Tr. at 61)[4]

Defendants' Motion is ripe for resolution.

## C.    Burden of Proof

Plaintiffs argue that a clear and convincing burden of proof should apply in deciding

questions of patent eligibility under § 101, citing a vacated Federal Circuit opinion in support of

their position. (*See* D.I. 524 at 6) (citing *Ultramercial, Inc. v. Hulu*, LLC, 722 F.3d 1335, 1342

(Fed. Cir. 2013) ("[A]ny attack on an issued patent based on a challenge to the eligibility of the

subject matter must be proven by clear and convincing evidence." (internal quotation marks

omitted)), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014))

Patent eligibility is a question of law. *See Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,

827 F.3d 1042, 1047 (Fed. Cir. 2016). Whatever evidentiary standard should be applied would

only apply to subsidiary "questions of fact and not to questions of law." *Microsoft Corp. v. i4i*

---

[3]During the pendency of the Motion, the Federal Circuit has issued at least 25 precedential opinions addressing § 101 issues.

[4]To the extent that Plaintiffs' expert declarations contain factual assertions, even if the statements are taken as true, they would not negate or undermine the patent specification.

10

*Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring). Here, there are no disputed

questions of fact relevant to Defendants' Motion. *See supra* Section III.B. Thus, the Court's

decision is made purely as a matter of law and does not turn on questions of fact, obviating the

need for the Court to choose a particular standard of proof. *See Rosenau*, 539 F.3d at 221.

### D.     The '737 Patent

The '737 patent generally discloses a system that facilitates network-based interactions

between a customer and a service provider. (*See* '737 patent at Abstract) The system allows

users to access, enter, and change account and service information over a network. (*See* 12:12-

24)

Defendants contend that claims 7, 8, 9, and 14 of the '737 patent are directed to patent-

ineligible subject matter. The Court will address each of these claims in turn.

#### 1.     Claim 7

Claim 7 of the '737 patent states:

A method for customer access to and manipulation of services and data of a
service provider comprising the steps of:

accessing a network;

entering a request;

displaying the request;

accepting the request via a customer contact services node Internet
gateway (CCSN/IG); and

processing the request remotely to facilitate customer access to and
manipulation of a plurality of customer-specific
information and services retained by the service provider.

('737 patent at 12:12-24)

11

### a.   *Mayo* Step 1

Step 1 requires the Court to consider whether the claims are directed to a patent-ineligible abstract idea. Broadly speaking, claim 7 is directed to the idea of allowing a customer to access and change his or her services. Defendants argue that claim 7 is directed to an abstract idea because it "takes the basic idea of account management and adds only the idea of doing it on the Internet." (D.I. 459 at 8) In support of their argument, Defendants note that "[f]or decades, if not for centuries, customers were able to manage merchant accounts by going to . . . merchants and providing new billing information." (*Id.*) "The only difference between this existing business practice and claim 7," Defendants argue, "is the use of a network . . . , which . . . does not transform the claim into something patent-eligible." (*Id.*)

The Court agrees with Defendants. The invention described by claim 7 is directed to the abstract idea of account management. The specification of the '737 patent confirms that this concept is the essence of the claimed invention. (*See* '737 patent at 2:29-33 ("[M]ost corporate home pages do not permit customers to make queries, get customer-specific information, or to make changes to their service. Adding these capabilities would create a more personalized and dynamic exchange with existing or potential customers."))

The Court further agrees with Defendants that account management is "a 'fundamental economic practice long prevalent in our system of commerce.'" (D.I. 459 at 6 (quoting *Alice*, 134 S. Ct. at 2356)) This is clear from the specification, which states that account management is a longstanding economic practice and describes the invention of claim 7 as a "complement" to pre-existing systems of account management. (*See* '737 patent at 1:17-21 ("[M]any companies provide call center automation systems and services, such as automatic call distributors,

12

interactive voice response (IVR) systems, coordinated voice and data delivery, and voice mail.");

2:61-65 (acknowledging that at least one company allows its customers to make account changes

using "an agentless, telephone based" system); 3:44-48 ("The WWW-based 'customer care'

channel of the present invention is an effective complement to a telephony channel and the

present invention envisions a set of WWW customer contact services similar to today's AIN

customer contact services."))

The Federal Circuit has found similar claims to be directed to abstract ideas.  For

example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d

1343, 1347 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015), the Federal Circuit held that the

claims under consideration were "drawn to the abstract idea of 1) collecting data, 2) recognizing

certain data within the collected data set, and 3) storing that recognized data in a memory."  In

characterizing those claims as abstract ideas, the Federal Circuit noted that the "concept of data

collection, recognition, and storage is undisputedly well-known."  *Id.*  Similarly, in *buySAFE*,

765 F.3d at 1354-55 (internal quotation marks omitted), the Federal Circuit held that the claims

at issue were "directed to an abstract idea" because they were "squarely about creating a

contractual relationship" – "a fundamental economic practice long prevalent in our system of

commerce."

Here, too, claim 7 is directed to an abstract idea.  Accordingly, claim 7 fails to satisfy step

1.

### b.    *Mayo* Step 2

At step 2, the Court looks at "the elements of each claim both individually and 'as an

ordered combination' to determine whether the additional elements 'transform the nature of the

13

claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 132 S. Ct. at 1294 (explaining that steps of claim must amount to more than "well-understood, routine, conventional activity").

Claim 7 contains five limitations: accessing a network, entering a request, displaying the request, accepting the request via a CCSN/IG, and remotely processing the request. (*See* '737 patent at 12:15-20) Plaintiffs argue that the limitation involving the CCSN/IG adds an inventive step. (*See* D.I. 524 at 10) In support of their argument, Plaintiffs note that, during claim construction, the Court construed CCSN/IG as "a web server and a gateway that is specifically designed to interface with at least an integrated service control point [("ISCP")] that is part of a telephone network switch." (D.I. 438 at 64) In Plaintiffs' view, "[b]ecause the 'CCSN/IG' element requires a 'specifically designed' gateway – and not a 'generic' gateway – this key limitation . . . transforms [the invention] into an inventive concept." (D.I. 524 at 8 (internal quotation marks omitted))

The Court is not persuaded. While it is true that the CCSN/IG is "specifically designed" to interface with a telephone network ISCP, the CCSN/IG is made of conventional components that work together in a conventional way. (D.I. 438 at 64) As explained in the specification, the web server corresponds to a "conventional Internet server" ('737 patent at 7:21-22), and the gateway may be a "common gateway interface" (7:42). The patent also indicates that the CCSN/IG uses a "conventional ISCP" and that the gateway communicates with the Internet and the ISCP using conventional protocols. (U.S. Patent No. 5,751,961 at 5:1-4, 33-37)[5] Thus, the

---

[5]The '737 patent incorporates by reference U.S. Patent No. 5,751,961. (*See* '737 patent at 1:7-12; *see also* D.I. 438 at 64 ("To define the 'ISCP' element . . . patentees expressly incorporated by reference its definition from U.S. Patent No. 5,751,961."))

14

limitation involving the CCSN/IG is not sufficient to satisfy the requirements of § 101. *See Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, 2015 WL 436160, at *4 (D. Del. Jan. 27, 2015) (invalidating patent that described using "front-end network gateways to allow users to interface with remote servers" where "such system elements have been used in the industry for many years").

Plaintiffs also contend that the claim's limitations, when viewed in combination, satisfy step 2. (*See* D.I. 826 at 3-4)  Again the Court disagrees.  Claim 7 fares no better when its limitations are viewed in combination because the specification does not describe how the CCSN/IG "is a technical improvement over prior art." *Bascom*, 827 F.3d at 1350.  Instead, the specification "states that the CCSN/IG works as a standard gateway, running standard software, using well-known protocols." (D.I. 828 at 3; *see also* '737 patent at 6:16-26)  Hence, considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S. Ct. at 2359 (internal brackets and quotation marks omitted).

Finally, Plaintiffs contend that claim 7 should be found patent-eligible by analogy to *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), which held that a claim satisfies § 101 if its "solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Here, though, while the solution offered by claim 7 is rooted in computer technology, the problem addressed by the claim – facilitating customer access and control over services – does not arise in the realm of computer networks.  Instead, the problem is an inherent part of any provision of services, regardless of whether the services are computer-based. By contrast, the patent at issue in *DDR*

*Holdings* addressed "the problem of retaining website visitors that . . . would be instantly transported away from a . . . website after clicking on an advertisement" – a problem that has no analogue in the non-digital world. *Id.* (internal quotation marks omitted). Therefore, the comparison to *DDR Holdings* does not help Plaintiffs.

Accordingly, claim 7 fails to satisfy step 2.

### c.     Machine-or-Transformation Test

Plaintiffs argue that the claim is patent-eligible under the machine-or-transformation test. Plaintiffs argue that the claim is directed to a specific machine – the CCSN/IG – and that the machine "transform[s] . . . account information stored in a database . . . into real-world activations." (D.I. 524 at 10) The Court disagrees.

As explained above, in order to satisfy the machine-or-transformation test, it is not enough for a process or method to be tied to a machine; the machine must "impose meaningful limits on the claim's scope." *See CyberSource Corp. v. Retail Decision, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (internal quotation marks omitted). "In other words, the machine must play a significant part in permitting the claimed method to be performed." *Id.* (internal quotation marks omitted). Here, because the CCSN/IG is nothing more than a collection of conventional devices used in conventional ways, the CCSN/IG fails to provide any meaningful limits on the scope of the claim.

### d.     Preemption

Finally, Plaintiffs contend that claim 7 does not have a large preemptive effect because the claim is limited to a single technology and a single industry. (*See* D.I. 524 at 7 n.5) "Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo*

16

framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2511 (2016). Thus, the preemption concerns raised by the parties are fully addressed by the foregoing analysis.

### 2. Claims 8 and 9

Claims 8 and 9 depend from claim 7. They provide:

> 8. The method according to claim 7, wherein the accessing step comprises accessing the Internet.

> 9. The method according to claim 7, wherein the accessing step comprises accessing an intra-net.

('737 patent at 12:25-28)

Claims 8 and 9, like claim 7, are patent-ineligible. Each claim adds only one new limitation to claim 7, and neither limitation provides an inventive concept that transforms claim 7 into a patent eligible claim. The '737 patent specification itself establishes that using both the internet or an intra-net was conventional. (*See* '737 patent at 1:36-40, 11:2-5)

Accordingly, claims 8 and 9 do not satisfy step 1 and step 2 and, hence, are patent-ineligible under § 101.

### 3. Claim 14

Claim 14 discloses a method similar to the method disclosed in claim 7:

A method for customer access to customer-specific services and data retained by a telecommunications service provider, comprising the steps of:

> establishing a connection between a customer end terminal and a remote telecommunications service provider's Web server over the Internet;

17

> providing customer access to the customer-specific information
> and the telecommunications services available through the
> telecommunications service provider's Web server;
>
> allowing customer modification of at least one of customer-specific
> information and telecommunications services available
> through the telecommunications service provider Web
> server; and
>
> receiving verification from the telecommunications service
> provider Web server of any modifications made to the
> customer-specific information and telecommunications
> services.

('737 patent at 12:47-65)

### a. *Mayo* Step 1

Like the method disclosed in claim 7, the method of claim 14 enables customers to access

and modify their services over a network. The essential difference between the two claims is that

claim 14 is limited to telecommunications services. Otherwise, however, both claims have an

identical structure.

For example, the first limitation in claim 7 refers to "accessing a network," while the first

limitation in claim 14 refers to "establishing a connection between a customer end terminal and a

[telecommunications web server]" – a step that amounts to accessing a specific *kind* of network.

(*Compare* '737 patent at 12:15 *with* 12:51-53) The other limitations are similarly paired, with

claim 14 containing more specific, telecommunications-based limitations. (*Compare, e.g.*, 12:16

*with* 12:58-61; *see also* D.I. 459 at 8 ("Like claim 7, claim 14 recites the age-old concept of

allowing a customer to manage his or her account, albeit using the Internet and a web server.")

(internal quotation marks omitted)) Thus, claim 14 is no less abstract than claim 7. *See Alice*,

134 S. Ct. at 2358 (explaining that ideas are not made any less abstract by "limiting the use of the

18

idea to a particular technological environment" (internal brackets omitted)).

Accordingly, claim 14 covers a patent-ineligible abstract idea and, therefore, fails to satisfy step 1.

### b. *Mayo* Step 2

Nor does claim 14 satisfy step 2, as the claim does not contain an inventive concept. Rather, as Defendants note, the claim contains "well-known components" (D.I. 459 at 10) such as "a remote telecommunications service provider's Web server over the Internet" ('737 patent at 12:52-53). "The claim['s] invocation of computers adds no inventive concept" to an underlying abstract idea. *buySAFE*, 765 F.3d at 1355; *see also CyberSource*, 654 F.3d at 1370; *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one.").

Lastly, Plaintiffs maintain that claim 14 describes a patentable invention because it satisfies the machine-or-transformation test and the test articulated in *DDR Holdings*. (*See* D.I. 524 at 10-11) Plaintiffs' arguments here are identical to those Plaintiffs offered in support of claim 7's patent-eligibility. For the same reasons the Court has already concluded that claim 7 is patent-ineligible under either test – that is, the claim uses conventional devices in conventional ways and addresses a problem that has an analogue in the non-digital world – the Court concludes that claim 14 is patent-ineligible notwithstanding the machine-or-transformation test and the comparison to *DDR Holdings*.

Accordingly, claim 14 fails to satisfy step 2.

### 4. Conclusion with respect to the '737 Patent

For the foregoing reasons, the Court concludes that claims 7, 8, 9, and 14 of the '737 patent are directed to an abstract idea. The claims do not include an inventive concept that would make them patent-eligible.

Accordingly, the asserted claims of the '737 patent are patent-ineligible.

### E.     The '200 and '957 Patents

The '200 and '957 patents share a specification and are directed to the same subject matter. Both disclose a "method and system for controlling the use of a short message service." ('200 patent at Abstract; '957 patent at Abstract) The system enables users to block and screen short message service ("SMS") messages based on predetermined criteria. (*See* '200 patent at Abstract; '957 patent at Abstract)

Defendants contend that claims 1, 3, 4, and 16 of the '200 patent and claims 1, 10, and 11 of the '957 patent cover patent-ineligible subject matter under § 101. The Court will address each claim in turn.

#### 1.     Claim 1 ('200 patent)

Claim 1 of the '200 patent states:

A method comprising:

> receiving a short message service (SMS) message at a first node;
>
> analyzing, at the first node, the SMS message to determine if a
>     predetermined criterion is present in the SMS message;
>
> if the predetermined criterion is not present, forwarding the SMS
>     message to a second node different from the first node; and
>
> if the predetermined criterion is present, blocking transmission of
>     the SMS message.

('200 patent at 9:25-35)

### a.    *Mayo* Step 1

Claim 1 is directed to the idea of screening SMS messages. Defendants argue that claim 1 covers an abstract idea because "[t]he concept of . . . screening messages is a basic, long-practiced concept in any communications medium or field." (D.I. 459 at 13) In Defendants' view, "the claimed method can be directly analogized to the abstract concept performed in the human mind – receiving, analyzing, and making a decision as to whether to forward a message based on set criteria." (*Id.* at 14)

The Court agrees. The specification of the '200 patent acknowledges that "[t]he concept of blocking and screening messages is a . . . long-practiced concept." (*Id.* at 13; *see also* '200 patent at 2:30-31 ("Just as access to specified telephone numbers may if required be selectively blocked, so too can the blocking of certain short messages be implemented in accordance with the present invention. The primary objective of the invention is accordingly to enable and implement such selective blocking of short messages.")); *cf. Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) ("[C]haracterizing e-mail based on the identifiers . . . and communicating the characterization – in other words, filtering files/e-mail – is an abstract idea."). Moreover, as Defendants note, each step in claim 1 – receiving, screening, and then forwarding or blocking a message based on predetermined criteria – could be analogously performed by a human, instead of by a computer. *Bascom*, 827 F.3d at 1348 ("[F]iltering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract."). It then follows that, just like the patent-ineligible processes in *Intellectual Ventures* and *Bascom*, claim 1

21

is directed to an abstract idea.

Accordingly, claim 1 fails to satisfy step 1.

### b.    *Mayo* **Step 2**

Defendants contend that claim 1 "provide[s] no further inventive concept," as it "simply

appl[ies] the [underlying] abstract idea to the field of SMS." (D.I. 459 at 15)  The Court agrees.

Claim 1 "merely stat[es]" that the abstract idea "will be applied to a particular type of message –

SMS." (*Id.*; *see also* '200 patent at 2:33-35 ("The primary objective of the invention is . . . to

enable and implement . . . selective blocking of short messages."))  Limiting the claims to "one

field of use" – here, SMS technology – is insufficient to confer patent eligibility. *Bilski*, 561 U.S.

at 612 ("[L]imiting an abstract idea to one field of use . . . [does] not make the concept

patentable.").

Plaintiffs oppose this conclusion by relying on *Bascom*.  But the claims at issue in

*Bascom* are not analogous to claim 1 in this case.  The patent at issue in *Bascom* "describes how

its particular arrangement of elements is a technical improvement over prior art ways of filtering .

. . content." *Bascom*, 827 F.3d at 1350 ("[P]rior art filters were . . . dependent on local hardware

and software, or confined to an inflexible one-size-fits-all scheme.  BASCOM asserts that the

inventors recognized there could be a filter implementation versatile enough that it could be

adapted to many different users' preferences while also installed remotely in a single location.

Thus, . . . the claims are more than a drafting effort designed to monopolize [an abstract idea].")

(internal quotation marks omitted).  Here, by contrast, the '200 patent describes "[t]he concept of

. . . screening messages [as] a basic, long-practiced concept in any communications medium or

field." (D.I. 459 at 13; *see also* '200 patent at 2:30-31 ("Just as access to specified telephone

22

numbers may if required be selectively blocked, so too can the blocking of certain short messages be implemented in accordance with the present invention.")) Moreover, instead of "recit[ing] any specific information or process" to determine whether an SMS message can be forwarded (D.I. 829 at 2), the claim generically recites that "predetermined criteri[a]" are used to filter messages. ('200 patent at 9:29) Hence, claim 1 does not add an inventive concept to the underlying abstract idea.

Finally, as with the '737 patent, Plaintiffs argue that claim 1 is patent-eligible because it satisfies the machine-or-transformation test and is comparable to the patent in *DDR Holdings*. Plaintiffs' arguments are unavailing. With respect to the machine-or-transformation test, while claim 1 relates to a machine, the solution offered by the claim does not analytically require a machine. Instead, as Defendants argue, the process of screening and blocking messages, as described in claim 1, is analogous to a human-executable process. (*See* D.I. 459 at 14) For the same reasons, Plaintiffs' analogy to *DDR Holdings* fails, as the solution provided by claim 1 is not "rooted" in computer technology. 773 F.3d at 1265. Thus, neither the machine-or-transformation test nor the test stated in *DDR Holdings* transforms claim 1 into a patent-eligible invention.

Accordingly, claim 1 does not satisfy step 2.

## 2.    Claims 3 and 4 ('200 patent)

Claims 3 and 4 depend on claim 1, specifying particular criteria by which messages can be screened. Claim 3 discloses screening based on "a particular destination address" ('200 patent at 9:40-41), while claim 4 discloses screening based on "a predetermined text element." (9:42-

43)[6] Claims 3 and 4, therefore, "merely require screening by destination [and] content . . .

respectively – tasks that humans perform" and, as such, fail to disclose an inventive concept.

(D.I. 459 at 16)

Accordingly, claims 3 and 4 are patent-ineligible under § 101.

### 3.    Claim 16 ('200 patent)

Claim 16 states:

A method comprising:

> receiving a short message service (SMS) message at a second node from a
>     first node, wherein the SMS message has been screened at the first
>     node prior to receipt at the second node;

> determining if the SMS message is allowed to be forwarded; and

> forwarding the SMS message to a third node different from the second
>     node if the SMS message is allowed to be forwarded.

('200 patent at 10:24-33)

#### a.    *Mayo* Step 1

Like claim 1, claim 16 generally pertains to screening messages. As explained above,

this is an abstract idea that is not patent-eligible under § 101.

Plaintiffs argue that the idea disclosed in claim 16 is different from the idea disclosed in

--------------------------

[6]In full, these claims state:

> 3. The method of claim 1, further comprising determining if the
> SMS message is addressed to a particular destination address.

> 4. The method of claim 1, wherein the predetermined criterion
> comprises a predetermined text element.

('200 patent at 9:39-43)

24

claim 1. (*Compare* D.I. 524 at 11 n.6 *with id.* at 11 n.7)  Specifically, Plaintiffs argue that the

claim refers not to screening *generally*, but rather to screening a message after the message has

already been screened. (*See id.* at 15-16)  While Plaintiffs' description is accurate, their

conclusion is not, as the claim is still directed to an abstract idea. *See Elec. Power*, 830 F.3d at

1354 ("Here, the claims are clearly focused on the combination of . . . abstract-idea processes. . . .

They are therefore directed to an abstract idea.").  Therefore, like claim 1, claim 16 is directed to

the abstract idea of screening messages.

Accordingly, claim 16 fails to satisfy step 1.

### b.   *Mayo* Step 2

Plaintiffs contend that claim 16 adds an inventive concept, satisfies the machine-or-

transformation test, and is analogous to the claims at issue in *DDR Holdings*. (*See* D.I. 524 at

18-19)  But Plaintiffs' contentions are identical to those the Court has already rejected with

respect to claim 1.  Therefore, for the same reasons the Court has concluded that claim 1 is not

patent-eligible – because the claim merely limits an abstract idea to a particular field of use; no

machine imposes meaningful limits on the claim's scope; and the solution offered by the claim is

not rooted in computer technology – the Court concludes that claim 16 does not add an inventive

concept to the underlying abstract idea of blocking and screening messages.

Accordingly, claim 16 does not satisfy step 2.

### 4.   Claim 1 ('957 patent)

Claim 1 of the '957 patent states:

A method of routing a short message in a communication network, the method
comprising:

25

> receiving said short message at a first network node and screening said short message to determine if said short message is forwardable;
>
> forwarding said short message to a second network node if said first network node determines that said short message is forwardable;
>
> receiving said short message at said second network node and screening said short message based at least in part on a set of criteria; and
>
> forwarding said short message if said set of criteria are satisfied by said short message.

('957 patent at 9:16-28)

### a. *Mayo* Step 1

Like claim 16 of the '200 patent, claim 1 of the '957 patent generally pertains to screening messages and also involves two rounds of screening. Plaintiffs argue that claim 1 is not directed to an abstract idea because it refers to two levels of screening. (*See* D.I. 524 at 14 ("[T]he claim[] [is] constrained by logical, physical, and electrical limitations, none of which are abstract.")) As previously discussed, however, two levels of screening do not transform the underlying abstract idea into something patent-eligible under § 101. *See Elec. Power*, 830 F.3d at 1354 ("Here, the claims are clearly focused on the combination of . . . abstract-idea processes. . . . They are therefore directed to an abstract idea."). ; *see also Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 2015 WL 4730906, at *6 (D. Del. Aug. 10, 2015) ("Performing an abstract idea twice in a row is not a meaningful limitation."), *aff'd*, 2016 WL 7118532 (Fed. Cir. Dec. 7, 2016). Thus, despite reciting an additional level of screening, claim 1 is still directed to an abstract idea.

Accordingly, claim 1 fails to satisfy step 1.

26

### b.     *Mayo* Step 2

Plaintiffs contend that claim 1 adds an inventive concept because "the field of SMS

system design was under growth and development at the priority date." (D.I. 524 at 18)  The

patent's specification, however, states, "[t]o date, short messages have become very popular

among telecommunication systems subscribers, and system operators have developed and

implemented an unusually large number of short messaging services and other services that are

accessible or usable via short messages." ('957 patent at 1:42-47)  Therefore, Plaintiffs have

failed to shown an inventive step.

Plaintiffs further argue that claim 1 satisfies the machine-or-transformation test and the

test articulated in *DDR Holdings*. (*See* D.I. 524 at 18-19)  Plaintiffs' arguments are identical to

those with respect to claim 1 of the '200 patent. Hence, the Court rejects them here as well.

Accordingly, claim 1 fails to satisfy step 2.

### 5.     Claims 10 and 11 ('957 patent)

Claims 10 and 11 depend from claim 1, as follows:

> 10. The method of claim 1, wherein said screening at said first network
> node includes checking whether said short message is directed to a
> destination number of a service for which an additional charge is
> applicable.
>
> 11. The method of claim 1, wherein said screening at said first node
> includes checking the text content of said short message.

('957 patent at 10:3-9)

Claims 10 and 11 cover the same abstract idea as claim 1, as they "merely require

screening by destination [and] content, . . . respectively – tasks that humans routinely perform."

(D.I. 459 at 16)  For the same reason, the claims' additional limitations "contain nothing

27

inventive over the abstract idea of screening." (*Id.*)

Accordingly, claims 10 and 11 do not satisfy step 1 or step 2 and, therefore, are directed to patent-ineligible subject matter under § 101.

### 6. Conclusion with respect to the '200 Patent and '957 Patent

For the foregoing reasons, the Court concludes that claims 1, 3, 4, and 16 of the '200 patent and claims 1, 10, and 11 of the '957 patent are directed to an abstract idea. These claims do not include an inventive concept that would make any of them patent-eligible.

Accordingly, the asserted claims of the '200 patent and '957 patent are patent-ineligible.

## IV. CONCLUSION

The Asserted Claims are directed to abstract ideas and do not contain any inventive concept. Thus, the Asserted Claims are patent-ineligible and the Court will grant Defendants' Motion.[7] An appropriate Order follows.

---

[7]"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *Bilski*, 545 F.3d at 951. In ruling on Defendants' Motion, the Court has not relied on any of the extrinsic evidence presented by the parties, but only on the pleadings and patents, which were attached as exhibits to the complaint.